# Knard et al. v. Hill.

*Action on the Case to recover Damages for the Killing of a
Horse.*

1. *Parties to partnership; general reputation.*—The existence of a
partnership can not be proved by common report or general reputa-
tion.

2. *Liability as partner to third person.*—One who is, in fact, not a
partner is not liable to a third person as such, unless by his conduct
he has held himself out as a partner, and such third person has been
misled by such conduct into dealing with the supposed partnership.

3. *Same.* Where, in an action against a partnership to recover
damages for the alleged wrongful killing of a horse, the plaintiff testi-
fies that he knew of no act, fact or circumstance indicating that one
of the parties sued was interested in the business of the partnership,
such person can not be made liable by reason of having held himself
out as the partner

APPEAL from the District Court of Colbert.

Tried before the Hon. W. P. CHITWOOD.

This was an action on the case, brought by the ap-
pellee, Chillian Hill, against J. Knard and J. W. Bain;
and sought to recover damages for the killing of a horse,
the property of the plaintiff, in a livery stable, alleged
to have been owned and kept by the defendants, through
the negligence of a teamster in charge of a team, alleged
to have belonged to the defendants. The facts of the
case are sufficiently stated in the opinion. There were
a great many charges asked, which it is deemed unneces-
sary to set out.

There was judgment for the plaintiff, and defendants
appeal.

KIRK & ALMON, for appellants, cited 3 Brick. Dig. 697,
§ 168; *Bernstein v. Humes*, 71 Ala. 269; *Herring v.
Skaggs*, 73 Ala. 455; *M. & E. R. R. Co. v. Kolb*, 73 Ala.
396; *L. & N. R. R. Co. v. Perry*, 87 Ala. 392; *Robinson
v. Bullock*, 66 Ala. 548; *Street v. State*, 67 Ala. 87; *Scar-
borough v. Malone*, 67 Ala. 570; *Tyree v. Lyon*, 67 Ala. 1;
*Levy v. Alexander*, 95 Ala. 101; *Fertilizer Co. v. Reynolds*,

85 Ala. 23; 3 Brick. Dig., 686, §§ 1, 2, 6; p. 108, § 23, p. 111, § 78.

J. W. COOPER, *contra*, cited *Rabitte v. Orr*, 83 Ala. 190; *Fertilizer Co. v. Reynolds*, 79 Ala. 497; *Ib.* 85 Ala. 19; *Thomas v. Green*, 30 Md. 1; *McDonnell v. Battle House Co.*, 67 Ala. 90; *McGrary v. Slaughter*, 58 Ala. 230; *Couch v. Woodruff*, 63 Ala. 466; Bates on Partnership, § 1143.

HEAD, J.—Case by appellee, Hill, against appellants, Knard and Bain, for negligently killing plaintiff's horse by running a hack and team against him. The main issue tried was the liability *vel non* of defendant, Knard, for the results of the negligence which the evidence tended to establish, causing the injury; the solution of which depended upon whether or not he, Knard, was interested, with Bain, in keeping and carrying on the livery stable, wherein plaintiff's horse was being kept when he was killed. The bill of exceptions contains all the evidence. We have examined it critically, and are of the opinion that there is none tending to show that Knard had any connection with, or interest in, the stable, which could impose any liability upon him for the negligence of Bain, or the servants employed in and about the stable, resulting in the injury to plaintiff's horse. The evidence upon this subject is as follows: Robert Ramsey testified for plaintiffs that he went to the stable with others shortly after the injury occurred and saw the horse with the wagon or hack pole run through his body. Efforts were being made for the relief of the animal, and he says that Knard was there and "furnished water, towels and some turpentine for the horse from his store. He told us to come to his saloon and get water, towels and turpentine, if we wanted them, and any thing we needed. He did furnish water, towels and turpentine and offered to do anything he could for the horse; he seemed to hate it very much." Witness never knew of any charge for the things. He also testified: "I usually put up at that stable when I came to town; it was always my understanding that it was Knard's and Bain's stable and we put up at it as such. It went by that name in my country." (Witness lived 18 miles from Tuscumbia, where the injury occurred.) "I considered it Knard's and Bain's stable. My deal-

[Knard *et al.* v. Hill.]

ings there were with Bain. * . * * I have seen Mr. Knard about the stable; never saw him do any work about it; never saw him exercise any acts of ownership over it at all. Something was said by Bain about a compromise. I afterwards saw him then and there go to and talk with Knard. Bain came back and said he would not compromise. I can't say whether Knard was at stable more than once on the day horse was killed. There were several men at the stable when I got there; all of them seemed willing to do what they could; none but Knard offered water, towels and turpentine. When I stopped at the stable Bain always took my horse, and I paid him for hitching in the stable. Knard never held himself out to me as a partner or interested in the stable; he never told me he was a partner or interested in the stable." N. S. Martin was next introduced by the plaintiff, and he testified that he had been about the stable, and did not know that it was ever known as the Knard and Bain stable; he had transactions with Bain, but none with Knard; never knew or heard of Knard being a partner of Bain in the stable. The plaintiff then introduced T. A. Hurst, who testified that about 4 years previously he bought a horse from Knard out of the stable, which horse K. said was his and Bain's. Had seen Knard and Bain about the stable; paid no attention to their business; knew nothing about defendant's business; don't know that they were partners. A. W. Ligon testified for plaintiff that he had lived in Tuscumbia a great many years; in latter part of 1887, had some notes against Bain for collection, and looking around for a chance to make the money spoke to Knard about it, and K. told him every thing in the stable belonged to him; did not say how he owned it or what claim he had to it. He passed by the stable very frequently, sometimes two or three times a day; never saw Knard transacting any business about the stable; saw him about the stable the next winter; never knew K. was a partner; never heard either of them say so. K. never held himself out to him as a partner in the stable. Plaintiff testified for himself, that he turned the horse over to Bain that morning to be hitched in the stable. "Knard was at the stable after the horse was hurt, and told us anything we wanted to send to the store for it; we got water, towels and turpentine from him; he never charged me for it that I know of;

[Knard *et al.* v. Hill.]

don't know how Knard found out the horse was hurt. I think Mr. Bain told me about it. Don't think Knard went with me; don't know where Bain went after telling me; Knard and Bain were at the stable; did not see them talking while there." The witness used this language: "I know of no fact or circumstance showing that Knard and Bain were partners. I never heard the stable spoken of as Knard's and Bain's stable in Knard's presence; it was known as Knard and Bain's stable. Knard never held himself out to·me as being a partner or jointly interested with Bain in the stable. I don't know that Knard had any interest in the stable, nor in the team which ran away. Knard never made any proposition to me, nor I to him, about the horse or a compromise. I know nothing about Knard having any thing to do with the stable. I usually hitched at that stable when I came to town, and paid for hitching. I had hitched there the week before. I have heard it called Knard & Bain's stable, but not in Knard's presence." This was all the plaintiff's evidence on this subject.

Defendants introduced two witnesses, who testified that they were well acquainted with the stable and had had many transactions in connection with it. One was the blacksmith who did all the horse shoeing for the stable; the other was a horse trader, living in the country, who patronized the stable largely, and had made many horse trades there. They both testified that it was Bain's stable; they had all their transactions there with him; that Knard had nothing to do with it, never held himself out.as having any interest in it. Bain paid all the bills that were paid for horse shoeing; they were all charged to him. Knard and Bain both testified emphatically and fully that K. had no interest in or connection with the stable business whatever, except that he held a mortgage on Bain's property in the stable to secure a debt for some horses and· vehicles he sold Bain when he, Bain, began the stable business. The mortgage was produced and put in evidence. That the stable belonged to K. and he rented it to Bain at $10 per month and collected the rent; that he had no interest in the business or the profits or losses arising therefrom. Knard frequently traded for and bought horses, and kept his horses, including his riding horse, at Bain's stable, and

[Knard *et al.* v. Hill.]

most always had a man to feed and look after his horse; never paid Bain for keeping them. Always patronized Bain's stable. The testimony of both defendants, as we have said, is full and explicit to the above effect, and not varied or contradicted by any thing brought out on cross examination. What does the plaintiff seek to extract from this testimony, as tending to show the existence of the alleged partnership? 1. Common reputation. 2. In 1887, Hurst bought a horse from Knard which he said was his and Bain's. 3. Knard said to a collector of claims, who was on the lookout for property of Bain, that the property in the stable belonged to him. 4. Knard patronized the stable and kept his horse there. 5. At the time plaintiff's horse was injured Knard went with others to the stable and showed solicitude and rendered aid for the relief of the suffering horse.

First. Common reputation can not be considered to establish the fact of partnership.—*Carter v. Douglass,* 2 Ala. 499; *Humes v. O'Bryan,* 74 Ala. 64; *Marble v. Lypes,* 82 Ala. 322; *Tanner Engine Co. v. Hall,* 86 Ala. 305. In order to bind one as a partner, in favor of a third person, when he was, in fact, not such, he must, by his conduct, have held himself out as a partner, and the plaintiff must have been misled, by such conduct, into his dealing with the supposed partnership. No extent of rumor or reputation, which the supposed partner had not brought about by his own conduct, can affect him; and this conduct must be proved by the party complaining, and that he was misled by it. The present plaintiff testifies, unequivocally, that he knew of no act, fact or circumstance indicating to him that Knard was interested in the stable business. This eliminates the whole subject of Knard's liability by reason of having held himself out as a partner, and all the instructions the court gave the jury on that subject were mere abstractions and improper. Then, let us examine the other propositions, dissociated from this immaterial evidence of reputation, and see if there is any tending to establish the partnership, as a fact; and in this connection, it is proper to consider any other undisputed fact essential to complete the proposition. Then, second: Knard held a mortgage on all Bain's stock in the stable; he sold one of the horses in 1887 to Hurst, and said it was his and Bain's, wherefore the inference that he and Bain were partners in the livery

business. Third : Knard held the mortgage aforesaid, and said to a collector in search of Bain's property, that the property in the stable was his ; wherefore the inference that he and Bain were partners in the livery business. Fourth : Knard was landlord of the stable rented to Bain, and patronized Bain's stable, wherefore the inference that he and Bain were partners. Fifth : When plaintiff's horse was injured, Knard went, with others, to the stable, and showed solicitude and rendered aid for the relief of the suffering horse, wherefore the inference that he and Bain were partners in the livery business. Other propositions are suggested in the brief, but they are more frivolous than the foregoing, if possible. It seems more than probable that this case went off as it did, on the immaterial evidence of reputation. There was no evidence going to establish the alleged partnership, and the court should have so instructed the jury as the defendants requested. With these views we do not deem it necessary to examine the many charges which were given for the plaintiff. Most of them are abstract, and some faulty for other reasons. We think the court will be sufficiently guided on another trial.

Reversed and remanded.