(77 South. 333)

WEIL BROS. v. HANKS et al. (7 Div. 840).

(Supreme Court of Alabama. Dec. 20, 1917.)

1. PARTNERSHIP ☞20—EXISTENCE OF RELATION—BUYING AND SELLING COTTON.

Where C. deposited $300 with H. as a margin for the latter's protection in their dealings, and, when C. bought cotton, the seller carried his ticket to H., who paid for the cotton, and, when C. sold cotton, the purchase money was paid to H., for which he would settle with C., retaining for himself the money advanced for its original purchase, plus 25 cents a bale as commissions for himself, C. being without authority to sell any cotton so held without the assent of H., a memorandum of all cotton bought by C. under the arrangement as well as that bought by H. individually being kept indiscriminately in a book by H., settlements being made with C. on his purchases immediately after each sale, there was no partnership inter sese between C. and H. for lack of the essential element of a sharing of profits and losses accruing from the joint enterprise.

2. PARTNERSHIP ☞35—PARTNERSHIP BY ESTOPPEL—BUYING AND SELLING COTTON.

That one defendant used another's store for his headquarters in buying cotton, and that such other was in some way interested in the cotton bought and sold because of some authority exercised by him over sales, and because of his direct personal reception of the money paid on account of such sales, did not support any rational inference of a partnership to establish a partnership by estoppel, since merely equivocal conduct which may or may not result from the partnership relation, and which consists equally with some nonpartnership relation, cannot fasten upon one person liability for the individual act of another.

3. PARTNERSHIP ☞37—PARTNERSHIP BY ESTOPPEL—FAILURE OF AGENT TO INQUIRE AS TO BUSINESS RELATIONS.

Where one person used another's store as his headquarters in buying cotton, and such other was in some way interested in the cotton bought and sold, the failure of an agent dealing with the first person to inquire of the other as to his business relations with the first, to discover if a partnership existed, was negligence in bar of his principal's right to recover against such other.

4. PARTNERSHIP ☞218(3)—PARTNERSHIP BY ESTOPPEL—QUESTION OF FACT.

When the evidence or its inferences is or may be conflicting, it is a question of fact for the jury whether there was such a holding out as partner as justified plaintiff in assuming without inquiry that defendant sought to be charged with liability was a responsible partner.

5. EVIDENCE ☞471(32) — CONCLUSIONS OF WITNESS ON ISSUE OF PARTNERSHIP.

It was not competent for a witness to state he had bought cotton from a claimed partnership by estoppel "through Coughlin" (one of the claimed partners), nor that they were engaged in the cotton business as partners, etc.; such testimony being but the conclusions of the witness on the main issue of partnership.

6. EVIDENCE ☞265(17) — DECLARATIONS OF CLAIMED PARTNER.

The acts and declarations of a defendant, not sanctioned by the other defendant, his claimed partner, expressly or impliedly, and not involving the other defendant in the sale in litigation, were not admissible against the other defendant.

Appeal from Circuit Court, Talladega County; Hugh D. Merrill, Judge.

Action by Weil Bros. against J. F. Hanks and J. H. Coughlin. From a judgment for defendants, plaintiffs appeal. Judgment affirmed.

Riddle & Riddle, of Talladega, for appellants. W. B. Harrison, of Talladega, for appellees.

SOMERVILLE, J. Plaintiffs bought 100 bales of cotton from J. H. Coughlin, and sue J. H. Coughlin and J. F. Hanks jointly for failing and refusing to deliver the cotton as contracted for. The complaint avers that plaintiffs were ready, willing, and able to receive and pay for the cotton, but does not aver any offer to do so.

The evidence shows that the cotton in question was bought by plaintiffs' local buyer at Talladega from Coughlin alone. But the contention is that Coughlin and Hanks were partners in the business of buying and selling cotton, or, if not partners inter sese, yet their visible association, their community of interest in cotton bought by them at various times, and their mode of doing business, constituted such a holding out by Hanks as a partner of Coughlin's, known to and re-

lied upon by plaintiffs' agent in this transaction, as to render Hanks liable to plaintiffs, on the principle of estoppel, as if he were in fact a partner. Knard v. Hill, 102 Ala. 570, 15 South. 345; Marble v. Lypes, 82 Ala. 322, 2 South. 701; Ala., etc., Co. v. Reynolds, 85 Ala. 19, 4 South. 639; Meharg Co. v. Davis, 189 Ala. 483, 66 South. 576.

[1] The evidence shows that about six months before this transaction Coughlin began to make his headquarters at the store of the Hanks Mercantile Company, where Hanks also stayed. Each of them had been buying and selling cotton before that time, and they continued to do so afterwards. They did business as follows: Coughlin deposited with Hanks about $300 as a margin for the protection of Hanks. When Coughlin bought cotton the seller carried his ticket to Hanks, who paid for the cotton, when Coughlin sold cotton the purchase money was paid to Hanks, for which he would settle with Coughlin, retaining for himself the money advanced for its original purchase, plus 25 cents per bale as commissions for himself. Under the arrangement existing between them Coughlin was without authority to sell any cotton so held without the assent of Hanks. A memorandum of all the cotton bought by Coughlin under this arrangement, as well as the cotton bought by Hanks individually, was kept indiscriminately in a single book by Hanks, settlements being made with Coughlin on his purchases immediately after each sale.

Under the settled rules of law defining the elements necessary to constitute a partnership, the chief essential being a sharing of the profit and loss accruing from the joint enterprise, there was clearly no partnership inter sese.

[2] We have carefully analyzed the evidence, in connection with the arguments of counsel, and do not think it has any tendency to show that Hanks has ever held himself out, or knowingly allowed himself to be held out, as a partner of Coughlin's, whether in his own or in Coughlin's transactions in the buying and selling of cotton. If plaintiff's agent, Bullard relied upon such a relationship in support of his transactions with Coughlin, it must have been solely in view of the fact that Coughlin was using Hanks' store for his buying headquarters, and that Hanks was in some way interested in the cotton bought and sold by Coughlin because of some authority exercised by him over Coughlin's sales, and because of his direct personal reception of the money paid on account for such sales.

But these facts, explicable in many other natural and reasonable ways, cannot convict Hanks of holding himself out as a partner responsible for Coughlin's transactions. The most that can be fairly said is that they show some business relationship between them, and some pecuniary interest in Hanks in the cotton handled by Coughlin, which is very far short of authorizing the assumption that they were partners.

It does not appear that either of them ever assumed or pretended to be acting for a firm, or other than for himself as an individual. Where merely circumstantial conduct, short of assertion, express or implied, is relied upon to show a "holding out," it is insufficient, unless it is fairly inconsistent with any other reasonable hypothesis than the existence of a partnership. Otherwise there is not in any legal sense a "holding out." Merely equivocal conduct which may or may not result from the partnership relation, and which consists equally with some nonpartnership relation, cannot fasten upon one person liability for the individual act of another. While the circumstances here relied on might support a speculation that Coughlin and Hanks might be partners, we hold that, as matter of law, they cannot support any rational inference thereof. On the contrary, before assuming and relying upon the existence of a partnership in such a case, it is the clear legal duty of a third person to make inquiry of the party upon whose credit he relies and whom he expects to charge with liability. Morgan v. Farrell, 58 Conn. 413, 20 Atl. 614, 18 Am. St. Rep. 282, 288.

[3] In the present case it does not appear that plaintiffs' agent ever made any inquiry of Hanks as to his business relations with Coughlin, an inquiry which he could easily have made, and which, it must be presumed, would have resulted in his due enlightenment. As matter of law, we think his failure to do so must be regarded as negligence in bar of his principals' right to recovery, even conceding that Hanks' conduct was equivocal and possibly misleading.

For these reasons, we think the trial court properly instructed for the defendant Hanks.

[4] We, of course, do not overlook the rule, which is well settled, that when the evidence or its inferences is or may be conflicting, it is a question of fact for the jury to determine whether there has been such a "holding out" as justified the plaintiff in the assumption, without inquiry, that the defendant sought to be charged with liability was a responsible partner. Note to Hahlo v. Mayer, 22 Am. St. Rep. 757, 761.

But here we hold that, resolving all material conflicts in the evidence in plaintiffs' favor, and according the most favorable inferences permissible, there is nothing tending to show such a holding out.

[5] It was not competent for the witness Bullard to state that he had bought cotton from Coughlin and Hanks "through Coughlin," nor that they were engaged in the cotton business as partners, nor that Hanks had never questioned the authority of Coughlin to sell the cotton, no occasion therefor being shown, nor that Coughlin was selling for

himself and Hanks. These were but conclusions of the witness upon the main issue being tried.

[6] Of course, the acts and declarations of Coughlin, not sanctioned by Hanks expressly or impliedly, and not involving Hanks in this sale, were not admissible against Hanks.

Many questions excluded when asked were in fact answered at other times. Many of the other questions to the witness Bullard were objectionable, but, if these and all the other rulings on the evidence had been favorable to plaintiffs, it would not have altered the situation as we view it.

Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.