7 So.2d 288

**PRICE v. COX.**

**6 Div. 985.**

Supreme Court of Alabama.

March 19, 1942.

Rehearing Denied April 16, 1942.

McQueen & McQueen, of Tuscaloosa, for appellant.

Jas. J. Mayfield, of Tuscaloosa, for appellee.

BOULDIN, Justice.

Appellee, D. E. Cox, brought suit in assumpsit against "Paul Wilson and George Price, partners doing business as The Villa Venice."

Mr. Wilson made no defense to the suit.

Mr. Price filed a sworn plea denying the existence of a partnership as alleged.

The cause was tried on this issue, resulting in a verdict and judgment against both defendants. Mr. Price appeals.

Appellant earnestly insists the evidence was insufficient to meet the burden of proof cast upon the plaintiff by the sworn plea denying the existence of a partnership between Wilson and Price, and that appellant was due the affirmative charge as requested. Code of 1923, § 7665, Code of 1940, Title 7, § 377.

In 1938, Mr. Price, a resident of York, owned and operated a grocery store in Tuscaloosa; he and Mr. Wilson were partners in operating a boarding house in Tuscaloosa patronized by students of the University. Mr. Wilson had the management; Mr. Price furnished supplies.

During the summer of 1938, one or both of them conceived the idea of leasing, conditioning and furnishing an old passenger station in Tuscaloosa, and operating a night club under the name of "Villa Venice."

In a letter of July 8th Mr. Price wrote: "Paul, I think we have something in our depot ideas, but have found no means of financing it." This letter in no way committed Mr. Price to become a partner in the enterprise, and suggested the forming of a stock company or getting some moneyed man in Tuscaloosa interested. Then added: "You have a wonderful opportunity and I think you have just what it takes to put it over, and further more I have never dealt with a squarer shooter than you are."

A letter of July 12th discloses Mr. Price had declined to sign a lease, again suggested enlisting a Tuscaloosa man, and further said: "It is true that the fear it would interfere with my store influenced me not to sign the lease. I had several Tuscaloosa people to question me on the matter. If you can get the lease oked with out me signing it I will consider taking an interest in it. You see if I sign the lease I cannot deny anything."

It appears by what followed that a lease of the property was acquired without Mr. Price's signature. On August 12th a contract in writing was entered into with Mr. Cox to do interior painting, sanding and varnishing floors, and finishing tables.

This contract was negotiated by Mr. Wilson; signed: "Paul Wilson, awarding authority, for Geo. Price & Paul Wilson." The caption disclosing parties and subject matter recited: "Partnership of Price & Wilson. Agent, Mr. Wilson." Clearly it purported to bind both as partners.

Admittedly, Mr. Cox performed his contract. Mr. Price, up to that date, had not held himself out to Mr. Cox as a partner or as otherwise interested in the project.

Other evidence tended to show Mr. Price visited the place of work while the painting and carpenter work were in progress and by word and act disclosed an interest in keeping down the cost of the painting job. Other evidence appears of a willingness to sell the boarding house business, with efforts to that end, the proceeds to be used to meet the expenses of fitting up the new place of business.

Other evidence tended to show an urgent need to meet pay rolls of August 20th, which brought Mr. Price to Tuscaloosa,

570

who gave a check to Mr. Wilson in part payment for the purchase of the latter's interest in the boarding house business, and aided in making this fund available to meet the pay rolls after banking hours. On September 1st Mr. Price caused notice to be published in a newspaper in Tuscaloosa, as follows:

" 'Notice. I have purchased Paul Wilson's interest in Hobb's Boarding House. He is no longer connected with it. I am in no way connected with Paul Wilson or Villa Venice.

" 'Signed- George A. Price.' "

Another phase of evidence, admitted over objections of defendant, was to this effect:

Mr. Wilson had a suit of his own against Mr. Price, pending in the Court at Tuscaloosa. Through an intermediary, a friend of Mr. Price, having business relations with Mr. Wilson in another state, Price made a settlement of Wilson's suit out of court without the knowledge or consent of counsel for either party. As of course, the compromise and settlement of a lawsuit, even a buying of the peace, is not blameworthy. It should be noted that Mr. Price, at the instance of his own attorney, paid the attorney's fee of Mr. Wilson's attorney. Nothing in this transaction per se concerned the plaintiff in the instant suit.

■ But the motive of getting that suit out of the way in advance of the trial of this suit was a question for the jury. If the jury should conclude, in the light of all the evidence, the motive was to win the favor of Wilson, have him remain out of the jurisdiction of the court, such procedure would be a circumstance unfavorable to defendant Price. We conclude this phase of the testimony was admissible.

■ A partnership, such as here in question, is a joint enterprise in which, by virtue of a partnership relation, the parties are to share in the profits and losses, which latter may include a joint obligation to meet the expenses of setting up in business.

■ Many forms of business in which two or more share in the profits accruing therefrom are not partnerships in which both parties are bound for losses or expenses, no partnership name being used or other holding out being involved. Weil Bros. v. Hanks et al., 201 Ala. 39, 77 So. 333.

We have a statute, however, which reads: "An agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless it is otherwise expressly stipulated." Title 43, § 30, Code of 1940.

■ Evidence which supports a finding that one has an interest in the business entitling him to share in the profits, shifts the burden to show an express stipulation relieving such a one from sharing losses. Fred Gray Cotton & Gin Co. v. Smith, 214 Ala. 606, 108 So. 532.

■ The existence of a partnership cannot be established by mere surmise or innuendo, but may be proven by circumstantial evidence, including the statements and conduct of the party whose relation is in question. 47 C.J. 727–729, §§ 136, 137, 138.

■ "A party who calls his adversary as a witness is not allowed to impeach him, but he may dispute specific facts although sworn to by the witness, and he may draw any inference from his testimony which the facts stated by the witness seem to justify." 70 C.J. 796, § 994.

■ Upon careful consideration, we are of opinion, the issue was for the jury on the whole evidence. Nor do we think, in view of the presumptions in favor of the verdict of a jury, and the ruling of the trial court on motion for new trial the verdict should be here disturbed upon the ground that it is clearly wrong and unjust.

Affirmed.

GARDNER, C. J., and FOSTER, and LIVINGSTON, JJ., concur.