[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 306 
This is a divorce case.
The suit was initiated when Evelyn L. Bailey filed a complaint in the Circuit Court of Jefferson County seeking a divorce from her husband, James D. Bailey, on the grounds of adultery and incompatibility. She also sought custody of the parties' two minor children, certain real and personal property, and one-half of the business known as the Handy Mart No. 1 located in Springville, Alabama. By subsequent amendments she claimed that during their marriage the parties had formed a partnership to own and operate grocery stores called Handy Mart No. 1, located in Springville, Alabama, Handy Mart No. 2, in Asheville, Alabama, and Springville Big Saver, in Springville, Alabama.
The trial court separated the partnership issue from the remaining issues and tried that issue on February 11, 1976. On March 16, 1976 the court ordered that no partnership had existed between the parties as to any of the three grocery stores which they had operated.
The hearing on the remaining issues was held in April 1976 and the trial court's final decree was issued on June 10, 1976. The court divorced the parties on the ground of incompatibility, awarded custody of the two children to Mr. Bailey, made a property division, and awarded Mrs. Bailey periodic alimony of $500 a month. She was also awarded an attorney's fee.
Both parties moved for an amendment of the judgment and a new trial. These motions were denied. Mrs. Bailey has appealed and Mr. Bailey has requested this court to dismiss the appeal.
 On the Motion
Mr. Bailey's ground for dismissal of the appeal is that Mrs. Bailey has accepted the awards made to her in the divorce decree without filing a supersedeas bond in that she has accepted the $500 monthly payment of alimony, accepted $2,500 in attorney's fees for her lawyer, refused to vacate the marital home which was awarded to Mr. Bailey, and continued to possess and use the Lincoln automobile which she was awarded. Citing Earle v. Reid, 25 Ala. 463 (1854), and Murphy's Heirs v.Murphy's Adm'r, 45 Ala. 123 (1871) as authority, Mr. Bailey maintains that since Mrs. Bailey has advantaged herself of the provisions of the divorce decree, she is estopped to deny the validity of the decree.
The wife replies by pointing out that the husband has not cross-appealed nor has he asked for a stay of the judgment pending the appeal; therefore, he has no standing to protest the appeal, especially since her complaint is that the trial court did not permit her to share equitably in the division of assets, i.e. she did not receive her fair share.
We agree with the wife. Since Mr. Bailey did not cross-appeal, we are faced with the alternatives of either affirming the judgment of the trial court or holding it in error for not awarding more assets to Mrs. Bailey. In neither event would her award be reduced; hence, we fail to perceive in what respect Mr. Bailey is injured by permitting Mrs. Bailey to have the judgment enforced pending the appeal. See Fitts v.Fitts, 284 Ala. 109, 222 So.2d 696 *Page 307 
(1969); Ryan v. Ryan, 267 Ala. 677, 104 So.2d 700 (1958). Consequently, the motion to dismiss the appeal is denied.
 On the Merits
Mrs. Bailey presents to this court three issues for decision:
 1. Whether failure of the trial court to find that a partnership existed between the parties and to dissolve said partnership is against the evidence, palpably wrong, and manifestly unjust.
 2. Whether the division of the assets of the marriage is manifestly unjust and grossly inequitable on the evidence adduced in this cause.
 3. Whether granting to the husband the use and occupancy of the parties' home without compensation to the wife is an award of alimony from the wife to the husband which is not permitted by Alabama law.
The facts will be discussed as they apply to the issues raised and argued.
 I
Mrs. Bailey contends that she and her husband operated a prosperous grocery concern as a partnership. Since Mr. Bailey denies the existence of a partnership, the facts pertaining to the acquisition and operation of the business are crucial.
Sometime prior to 1968 the parties to this appeal decided to go into business for themselves. Since their marriage, Mr. Bailey had worked in the food business, first as a store clerk in a supermarket and then as a buyer for a food broker. In his travel for the food broker Mr. Bailey discovered a grocery business, the Springville Big Saver, for sale. He took Mrs. Bailey to inspect the business and after discussion together they decided to buy it. The purchase was financed by a note for $22,500 cosigned by Mr. Bailey and an uncle; Mrs. Bailey did not sign the note. Several weeks before they took over the business, Mrs. Bailey worked in the store so that she could learn the grocery business, as she had no prior experience in that field.
At this time the parties discussed forming a corporation but discarded the idea when they learned that three people were required to incorporate. They did not want to include a third person in the business. Mrs. Bailey said they also discussed forming a partnership; Mr. Bailey said they did not. In any event, no formal agreement of any kind was ever drawn between them. The business never filed income tax returns as a partnership.
Initially both parties worked diligently to make the grocery business a success. Generally, Mr. Bailey did the buying and took care of stock and Mrs. Bailey kept the books and operated the cash registers, since that was where her past experience lay. In Mr. Bailey's words, "We just had to do everything we could to start with, cut help down as close as we could." Neither drew a salary so that as much profit as possible could go back into the business. Net profits from its operation were put into a checking account and a savings account owned jointly by the parties. The $22,500 note signed by Mr. Bailey and his uncle was repaid with funds withdrawn from these joint accounts.
The Springville Big Saver was successful and the parties were able to purchase and open another store, the Handy Mart No. 1, using funds from the joint accounts. No debt was incurred by either party. At some point a third store, the Handy Mart No. 2, was also purchased and opened in the same manner. Mr. and Mrs. Bailey divided their time between these stores.
In 1971 the Springville Big Saver was sold. Proceeds from the sale were placed in a joint savings account and later used to purchase the house in which the parties lived at the time of the divorce. In 1972 the Handy Mart No. 2 was also sold and the proceeds placed in a joint savings account.
The financial operation of all three stores was the same. Both parties were entitled to draw on the accounts opened in the name of each store, i.e. the Springville Big Saver, the Handy Mart No. 1, and the Handy Mart No. 2. Additionally both had equal access *Page 308 
to a joint checking account and several joint savings accounts all of which were funded with checks drawn on the business accounts. Neither was paid a salary; rather, they used the joint checking account to pay personal and family expenses. Sometimes the parties would take cash directly from a store register, leaving a receipt in the drawer to indicate what amount had been withdrawn, and deposit that amount into the personal accounts. These three grocery concerns were the parties' only source of income after 1968.
Although both Mr. and Mrs. Bailey worked equal hours initially in the operation of the business, after the Springville Big Saver and the Handy Mart No. 2 were sold only Mr. Bailey worked full time at the Handy Mart No. 1. Mrs. Bailey worked one day a week. However, when Mr. Bailey became ill Mrs. Bailey replaced him at the Handy Mart No. 1 throughout his illness. It was Mr. Bailey who dealt directly with the employees and made decisions to hire and fire personnel.
Sometime in the latter part of 1974 the parties' relationship began to deteriorate. It seems that after January 1975 Mrs. Bailey no longer worked in the store at all; how much or little she worked during 1974 was disputed. In 1975 Mr. Bailey had the Handy Mart No. 1 checking account changed by removing Mrs. Bailey's name from the signature card.
On March 16, 1976 the trial court entered a decree finding that no partnership exists or existed between the Baileys in any of the three business ventures previously named. Mrs. Bailey says the trial court is due to be reversed as its finding is against the great weight of the evidence.
Where, as here, there is no written partnership agreement between the parties, and the question is whether as between the two a partnership existed, the question is one of part law and part fact. Adams v. State, 43 Ala. App. 281, 189 So.2d 354, cert. den., 280 Ala. 707, 191 So.2d 372 (1966). The trial court has already made the factual determination that no partnership existed. The ore tenus rule applies in partnership cases as in all others. The finding of the trial judge has the effect of a jury verdict, and the decree will not be disturbed unless it is palpably wrong. Hair v. Beall, 274 Ala. 699, 151 So.2d 613
(1963); Dicks v. McAllister, 20 Ala. App. 5, 100 So. 631, cert. den., 211 Ala. 422, 100 So. 632 (1924). Thus, the decree stands with a presumption of correctness.
Alabama has adopted the Uniform Partnership Act found in Title 43, Chapter 1A, Code of Alabama 1940 (Recomp. 1958) (Supp. 1973), but this case is not due to be decided under that act, since section 5 (6) explicitly exempts any association existing prior to the enactment of the act. The act became effective January 1, 1972; all of the businesses in question were acquired prior to 1972. Thus, pursuant to section 5 (5), the rules of law and equity will govern the decision of this case.
Where there was no written partnership contract and no express agreement between the parties for the creation of a partnership, whether a partnership existed must be determined from the character and conduct of the business and the intent of the parties as gathered from the attending circumstances.Zuber v. Roberts, 147 Ala. 512, 40 So. 319 (1906); Hair v.Beall, supra.
The critical factor in making this decision appears to be whether the parties have agreed to share the losses as well as the profits. See, e.g., Odess v. Taylor, 282 Ala. 389,211 So.2d 805 (1968); Norden v. Capps, 272 Ala. 473, 131 So.2d 679
(1959); Price v. Cox, 242 Ala. 568, 7 So.2d 288 (1942); Whitev. Jackson, 36 Ala. App. 643, 62 So. 477 (1953); Cox v.Fielding, 24 Ala. App. 68, 130 So. 164 (1930). The obligation to bear loss must be legally binding; it is not sufficient that one is to receive a percentage of net profits and be paid nothing if there are no profits. Stafford v. Sibley, 106 Ala. 189,17 So. 324 (1894).
The evidence compels the conclusion that Mrs. Bailey incurred no liability on the indebtedness in the acquisition of the first grocery store, the Springville Big Saver, since Mr. Bailey and his uncle signed the *Page 309 
note. Thus, Mrs. Bailey did not initially incur any legal obligation for the losses of the business as required by our decisions, even though it was through the joint effort of both that the indebtedness was discharged and even though she shared equally in the profits of the business.
The second and third grocery stores, the Handy Mart No. 1 and No. 2, were purchased with profits from the Big Saver which were placed in savings. The evidence does not reflect any more responsibility in Mrs. Bailey for losses in regard to these two stores than was the case with the Springville Big Saver.
Considering the evidence in its most favorable light to Mrs. Bailey, we cannot say that the trial court palpably abused its discretion in holding that no partnership arrangement existed between Mr. and Mrs. Bailey in the operation of their three grocery stores.
 II
Mrs. Bailey next says that the evidence in this case clearly shows that the trial court's division of property order is manifestly unjust and grossly inequitable and should be reversed. The evidence adduced in this case revealed the following pertinent facts.
The parties were married in 1954 when Mrs. Bailey was still in high school. Upon her graduation she worked for one year in a dress shop. In 1968 when the Springville Big Saver was acquired Mrs. Bailey was working for the U.S. Post Office. Mr. Bailey's employment history has already been stated.
At the time of their marriage the Baileys owned nothing; all of their assets have been acquired through their joint effort since their marriage. After acquisition of the grocery business in 1968 both parties worked together to build that business into a lucrative enterprise. By the time of the divorce their assets were valued between $150,000 and $180,000.
Two children were born of the marriage. The son is now nineteen and the daughter is sixteen. Mr. Bailey testified that prior to the breakdown of the marriage, Mrs. Bailey, in addition to her work in the business, was a good homemaker for their family; she cooked and cleaned house and washed clothes without outside help. Mr. Bailey said that for the past two years he had had the primary responsibility of caring for the children, even though Mrs. Bailey then worked very little at the store and it was she who was at home.
It is evident that sometime in 1974 Mrs. Bailey began having problems in her perception of reality. On two occasions she consented to visit psychiatrists but refused to be treated. It appears that this problem was the primary cause for the breakdown of the marriage and the termination of Mrs. Bailey's participation in the grocery business. It further appears that her condition has strained her relationship with the parties' children as well as with Mr. Bailey.
After the divorce action was filed, Mrs. Bailey was enjoined from interfering with any of the funds held in the parties' various joint savings accounts. In violation of that order Mrs. Bailey transferred some $20,000 held in one joint account into her own name. Taking this action into account, the trial court divided the parties' assets as follows:
 1. Mr. Bailey was given custody of the children. He was also given the right of exclusive use and occupancy of the marital home until the youngest child reaches majority, marries or becomes self-supporting, at which time the house is to be sold and the proceeds divided between the parties.
 2. Title to the household furniture, furnishings and equipment was vested in Mr. Bailey. Mrs. Bailey was awarded $3,000 as alimony in gross in lieu of a division of the household furnishings, furniture and equipment. There was no testimony as to its value.
 3. Mrs. Bailey was given the income of $124.28 per month from a lease-sale contract between the parties and a Mr. and Mrs. Campbell, which could eventually amount to a total of about $20,450. *Page 310 
 4. Mr. Bailey was given title to certain cemetery lots.
 5. The money in joint savings accounts was split as follows: $12,986 was divided evenly between the two. Mr. Bailey additionally was given $20,000; $23,192; $1,409; and $1,000, totalling $45,601. Mrs. Bailey received additionally $5,700; $20,000; and $600; adding this to the $20,000 she had already appropriated, she received a total of $46,300.
 6. Mrs. Bailey received a 1973 Lincoln automobile valued at $5,900. Mr. Bailey received a 1975 Honda valued at $2,400; a motor home valued at $7,000; a 1932 automobile valued at $3,000; and a motor boat valued at $1,500.
 7. Mr. Bailey was given twenty shares of capital stock in the Asheville Savings Bank. He also received full title to the Handy Mart No. 1 and the Handy Mart No. 2, including the assets thereof and the property used therein.
In addition, Mr. Bailey was required to maintain a life insurance policy of $20,000 with Mrs. Bailey as beneficiary, and a life insurance policy of $5,000 with the minor children as beneficiaries. He also was required to pay Mrs. Bailey $500 per month as alimony and $2,500 as attorney's fees. (By a separate order Mr. Bailey was required to pay fees of $3,000 to the guardian ad litem which had been appointed at his request.)
We have said that a court, in making a property settlement, should consider:
 ". . . the earning capacity and future prospects of the parties, their ages, sex, health and station in life, how long they were married, whether there are children to support, and the conduct of the parties with reference to the cause of the divorce, Tyler v. Tyler, 52 Ala. App. 430, 293 So.2d 856." Hamaker v. Hamaker, 57 Ala. App. 333, 338, 328 So.2d 588, 592
(1975).
But we have also said that the distribution of marital property lies within the sound discretion of the trial court, Mullinaxv. Mullinax, 56 Ala. App. 676, 325 So.2d 185 (1976); Conwell v.Conwell, 56 Ala. App. 188, 320 So.2d 694 (1975), and that the division of property is not required to be equal but is to be graduated according to the nature of the case. Griffin v.Griffin, Ala.Civ.App., 338 So.2d 416 (1976); Hamaker v.Hamaker, supra; Horsley v. Horsley, 50 Ala. App. 445,280 So.2d 150, cert. den., 291 Ala. 782, 280 So.2d 155 (1973).
After a careful consideration of the facts in this case, we are impressed with the trial court's effort to equitably dispose of the fruits of this marriage. It was not a fifty-fifty division of assets. Mr. Bailey received money and property valued in excess of $70,000 in addition to the Handy Mart No. 1, valued at about $21,000; Mrs. Bailey received approximately $65,000 and no part of the business assets. However, as we have just pointed out, such a mathematically equal distribution is not required.
In Horsley v. Horsley, supra, we upheld an award of one-third of the parties' total assets where the wife had assisted in the business, had received no salary for her endeavors, and had no outside income. During the marriage she had performed all the work necessary to run the household and had reared the parties' five children without any outside assistance. There was also evidence that the wife was in ill health and had been advised to have an operation. We did however reverse the trial court for its failure to award periodic alimony. In the case at bar the wife received a periodic alimony award of $500 per month. This places the ultimate outcome of Horsley on a comparable footing with the decision in the instant case.
In another case similar to the case at bar, Grant v. Grant,49 Ala. App. 559, 274 So.2d 329 (1973), the wife contested an award to her of $5,000 where the rest of the parties' property was vested in the husband. The evidence showed that both parties had worked hard to acquire what they had. All earnings had gone into a joint bank account and all purchases of property, both real and *Page 311 
personal, had been made from that joint account. A lot on which the parties built a house was purchased. Funds from the account were used to start a business wherein the husband did plumbing and electrical contracting; the wife did the bookkeeping. Receipts from the business were deposited into the joint account and the wife deposited her wages into that account. Apparently the parties lived solely on her wages. Funds from the account purchased three trucks and a car. Cash was paid for an additional lot and a building erected thereon from which the business operated. The husband held title to all the motor vehicles, the business, and the marital house and lot; the wife had joint title only in the lot on which the business was located. At the time of the divorce the parties had $11,459 in the bank. We reversed the trial court and said that an equitable division of the property would be to give the husband the business and the wife the home, with the wife additionally to receive the $5,000 initially awarded from the bank account. We did emphasize the fact the wife had contributed as much to the parties' assets as had the husband.
It is true that in the case at bar Mrs. Bailey was not only the homemaker but she also worked in the grocery businesses, although to what extent is not clear. The parties were obviously hard working and by plowing the profits back into the business were also very successful. It is conceded that the wife's efforts contributed to the success of their grocery businesses. Nevertheless we cannot say, based on the evidence in this case, that the trial court plainly and palpably abused its discretion in the division of these parties' property. Had this court been faced with the initial decision the outcome might have been different, but we are not permitted to substitute our judgment for that of the trial court. Hence we do not find reversible error in that aspect of the trial court's decree dividing the parties' property.
 III
Mrs. Bailey finally asserts that the trial court erred in that part of its decree wherein it awarded the parties' residence to Mr. Bailey for his use and benefit until the younger child reaches majority, marries or becomes self-supporting, at which time the property is to be sold and the proceeds divided equally. Mrs. Bailey argues that during the time Mr. Bailey is using the property, she is being required to contribute to his support and he is well able to support himself. This requirement of support is in effect a directive that she pay her former husband alimony, and there is no authority for a court in Alabama to order a wife to pay alimony to a former husband. She says her contentions are supported by the holding in Davis v. Davis, 279 Ala. 643,189 So.2d 158 (1966).
In Davis the husband was awarded custody of the minor child of the parties and also given the use and benefit of the parties' jointly owned home until the child reached majority or became self-supporting. The supreme court held it was reversible error for the trial court to have awarded the use of the parties' home to the husband for the use of the child. The court said:
 ". . . In effect, the wife, to the extent of her one-half interest in the Gadsden property, is being required to contribute towards the maintenance and support of the husband. Since the evidence clearly shows that the husband is well able to care for himself and the child, no question is presented as to the duty, if any, the wife might have to maintain and support an indigent husband.
 "In the absence of a statute so providing there is no authority in this state for awarding alimony against the wife in favor of the husband. See: Atkins v. Curtis, 259 Ala. 311, 315, 66 So.2d 455; 24 Am.Jur.2d Divorce and Separation, § 527, p. 651; 27A C.J.S. Divorce § 204, p. 886. There is no statute in this state authorizing such award. The statutory scheme is to provide alimony only in favor of the wife. . . . There is no provision for an allowance to the husband out of the wife's estate." 279 Ala. at 644, 189 So.2d at 159. *Page 312 
Davis has never been overruled, and indeed has been reemphasized. In Baggett v. Baggett, 47 Ala. App. 539, 542,258 So.2d 735, 738 (1972), this court said:
 ". . . Davis held that the granting of the use of jointly owned property to the husband to be used as a home for himself and a child in his custody was in effect requiring the wife to contribute to the support of the husband contrary to the common law. Davis does not apply to a division of jointly owned property."
In Hamaker v. Hamaker, supra, we said:
 "To award the husband the use of property as a home for the child is indeed alimony to the extent that the wife's interest is contributed towards the maintenance and support of the husband, Davis v. Davis, 279 Ala. 643, 189 So.2d 158. However, the Davis case has explicitly been held inapplicable to a permanent division of jointly owned property, Baggett v. Baggett, 47 Ala. App. 539, 258 So.2d 735. The instant award is clearly a property division, not an interlocutory award of support." 57 Ala. App. at 337, 328 So.2d at 591.
The award in the case at bar fits squarely within the rationale of Davis and is governed by the holding of that case.Hamaker and Phillips v. Phillips, 52 Ala. App. 234,291 So.2d 322 (1974), are distinguished for the reason that in each of those cases the trial court ordered a final division of the parties' jointly owned property at the time of the divorce. In the case at bar, as well as in Davis, the property settlement was postponed until the younger child reaches her majority or becomes self-supporting.
For the error in awarding the use of the parties' residence to appellee, that aspect of the judgment is reversed and the cause remanded for other and further disposition of this property. The remainder of the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.