These appeals are from a judgment based on a jury verdict awarding compensatory and punitive damages to Ray and Myrtle Crowell in an insurance fraud action against Reserve National Insurance Company and Phillip Bailey. Reserve National and Bailey appeal the trial court's denial of their motions for a judgment notwithstanding the verdict and for a new trial. Reserve National appeals, in the alternative, from the trial court's order of remittitur. The Crowells cross-appeal from the order of remittitur. We affirm.
Bailey, a field agent for Reserve National, sold Medicare supplement policies to the Crowells on September 2, 1988. The Reserve National policies were to replace their existing policies held with Liberty National Insurance Company. Bailey told the Crowells that Reserve National offered a policy that was better than their existing coverage with Liberty National, and that, for payment of an extra month's premium, they would receive immediate coverage and a "pre-existing benefits" (PEB) rider, i.e., a policy addendum providing coverage for pre-existing conditions. The Crowells paid Bailey two months' premiums on each policy. Bailey did not indicate on their application that the Crowells were replacing an existing policy.
The evidence at trial showed that an application for a PEB rider with Reserve National must be for a replacement of an existing Medicare supplement policy (MSP), and that Reserve National requires payment of a quarterly premium rather than a monthly premium in order to obtain immediate coverage. Immediate coverage would give an effective date as the date of application, *Page 1007 
which was September 2, 1988. The reason the Crowells paid an extra month's premium was that Bailey assured them that doing so would give them immediate coverage and the PEB rider.
Jeff Reeves, of Reserve National's home office in Oklahoma City, received the Crowells' application on September 13, 1988. The application showed that the Crowells wanted PEB riders and immediate coverage for pre-existing conditions, but did not indicate that their policies were to be replacement policies. Bailey telephoned Reeves on October 17, 1988, and told him that the Crowells were, in fact, replacing an existing policy. Reeves then told Bailey to finish the paperwork (which should have included MSP replacement forms signed by the Crowells) on the Crowells' application and send it to him in Oklahoma City. However, Bailey never got the Crowells to sign a Medicare supplement replacement form, even though Reeves had earlier written three times to Bailey requesting replacement forms for the Crowells. Reeves issued the policy without a PEB rider and with an effective date of November 3, 1988.
Myrtle Crowell received her new Medicare supplement policy on November 15, 1988, and on that day she telephoned Reserve National's David Harvey. She told him that Phillip Bailey had told her that the effective date on her policy would be the day of application, September 2, 1988, and that she had paid an extra month's premium to receive immediate coverage. Mrs. Crowell also told Harvey that she had had a heart attack and surgery in October, that her old MSP insurance had lapsed, and that she needed coverage from her policy with Reserve National for October. Harvey told her that the extra month's premium waived the six-month waiting period for pre-existing conditions coverage. Mrs. Crowell understood this to mean that she had coverage for pre-existing conditions and would receive coverage for her October expenses not covered by Medicaid.
Harvey told his supervisor, Juanita Phelps, about Mrs. Crowell's telephone call because, he said, Mrs. Crowell "thought she had coverage and she didn't, which is a new issue, and Mrs. Phelps is over the new issue department." R.T. 248. Reserve National later changed the effective date of Mrs. Crowell's policy to October 3, 1988.
After Ray Crowell had prostate surgery on January 11, 1989, Reserve National denied his claim on the grounds that his prostate condition was a pre-existing condition and that he did not have PEB coverage under his health insurance policy with Reserve National. The hospital filed claims for Mr. Crowell's prostate treatment with Reserve National, which refused to honor the claims.
The Crowells' daughter, Dorothy Ziglar, telephoned Reserve National, at her parents' request, on October 23, 1989. She spoke with David Harvey and told him that when her parents applied for their policies with Bailey they had paid an extra month's premium for a waiver of the six-month waiting period, in order to receive coverage for pre-existing conditions. Harvey told Ziglar that he had no proof that her parents had paid the extra month's premium and told her what information to send him to show that they had paid the extra premium. On October 31, 1989, Harvey received Ziglar's letter containing a copy of the Crowells' September 2, 1988, receipt signed by Bailey and showing an initial payment of $207.50.[1]
Harvey turned Ziglar's letter over to his supervisor, Mrs. Phelps. No one from Reserve National responded to Ziglar's letter, although the letter was placed in Reserve National's file concerning the Crowells.
The hospital, unable to collect from Reserve National, turned Mr. Crowell's case file over to a collection agency. The Crowells received several collection letters from the credit agency between September and November 1989 about Mr. Crowell's hospital bills. *Page 1008 
The Crowells sued Reserve National and Phillip Bailey. The case was submitted to the jury on the Crowells' claim of fraud; the jury rendered a verdict in favor of the Crowells in the amount of $25,000 compensatory damages and $1,000,000 punitive damages.
Reserve National timely filed motions for a new trial, or, in the alternative, for a judgment notwithstanding the verdict, or, alternatively, for a remittitur. The trial court denied the first two motions, but granted a remittitur of $400,000 on the punitive damages award. The Crowells accepted the remittitur of punitive damages from $1,000,000 to $600,000 on March 17, 1992. The trial court issued an amended judgment for $625,000 in favor of the Crowells on March 30, 1992.
Reserve National and Bailey appeal the trial court's denial of their motions for a judgment notwithstanding the verdict and for a new trial. Reserve National appeals, in the alternative, from the trial court's order of remittitur, contending that it was an insufficient reduction in the amount of punitive damages. The Crowells cross-appeal from the order of remittitur.
The parties raise four broad issues on appeal: Whether the award of punitive damages was appropriate in this case; whether the judgment, as amended, was sufficient; whether evidence of bias was properly admitted against Reserve National; and whether the trial court erred in its charge to the jury. No party challenges the constitutionality of the punitive damages statute, Article 2 of Chapter 11, Title 6, Code of Alabama 1975.
 I.
The defendants contend that the award of punitive damages was not supported by the evidence, because, they allege, Bailey did not know that his representations to the Crowells were false when he led them to believe that they would receive immediate coverage for pre-existing conditions by paying two monthly premiums when they applied for MSP insurance. Section6-11-20(a), Ala. Code 1975, provides:
 "Punitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."
The Crowells sued the defendants for damages based on fraud. Fraud that allows punitive damages is defined as "[a]n intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." § 6-11-20(b)(1). Clear and convincing evidence represents
 "Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
§ 6-11-20(b)(4).
The jury was instructed on these requirements for the imposition of punitive damages. Whether the defendants intended to deceive the Crowells was a question of fact for the jury to decide. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726, 729 (1976). Although there was conflicting evidence on the matter, there was also sufficient evidence for a jury to determine that Bailey and Reserve National intended to deceive the Crowells into believing that they had paid for immediate coverage for pre-existing conditions. The evidence was undisputed that the Crowells told Bailey about Ray Crowell's prostate condition before he sold them policies to replace their existing policies with Liberty National. Bailey told the Crowells that they would receive better coverage than they had under their old policy, yet admitted at trial that their Reserve *Page 1009 
National policy offered the same coverage as the one it was replacing, even though the monthly premiums under the Reserve National policy were approximately $20 more. Reserve National knew that Bailey had collected an extra month's premium from the Crowells and that the Crowells believed that this payment provided them with more coverage than they actually received when Reserve National issued the policies without a PEB rider and with an effective date of November 3, 1988, which was two months later than the date of their initial payment on September 2, 1988.
A jury's verdict is presumed to be correct "where there is some [clear and convincing] evidence, or a reasonable inference therefrom, to support the verdict, and . . . this presumption is strengthened when the trial court denies a motion for a new trial." Thompson v. Cooper, 551 So.2d 1030, 1031 (Ala. 1989). Although the trial court ordered a remittitur of the $1,000,000 verdict, that court's final judgment indicated that punitive damages were warranted against the defendants, albeit in an amount less than that awarded by the jury.
In order to reverse the judgment of the trial court, this Court "must be convinced that the verdict and judgment are contrary to the preponderance of credible evidence and are, therefore, palpably wrong and manifestly unjust." Mobile Dodge,Inc., v. Waters, 404 So.2d 26, 27 (Ala. 1981). Because there was sufficient credible evidence for a jury to award punitive damages against both defendants pursuant to § 6-11-20, we conclude that the award of punitive damages in this case was appropriate.
Reserve National contends that the award of punitive damages violated its due process rights because the amount of the award was over 600 times the amount of the Crowells' out-of-pocket expenses. However, "the essential purpose of punitive damages would be thwarted if we required that they conform to any mathematical equation." Associates Financial Services Co. v.Barbour, 592 So.2d 191, 199 (Ala. 1991). Therefore, Reserve National's contention that the award of punitive damages violates its constitutional rights is without merit in this case. See Barbour and cases cited therein.
 II.
We now must address the sufficiency of the judgment as amended. The jury returned a verdict of $1,000,000 in punitive damages to the Crowells. The trial court, following the directives of this Court in Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989), and Hammond v. City of Gadsden, 493 So.2d 1374
(Ala. 1986), determined that the award of punitive damages was excessive, and it ordered a remittitur of $400,000. The Crowells accepted the remittitur, and the court entered an amended judgment of $600,000 in punitive damages and $25,000 in compensatory damages. The amended judgment indicated that the Crowells were entitled to recover only up to $250,000 in punitive damages from Phillip Bailey, pursuant to Alabama Code 1975, § 6-11-21.[2]
Reserve National contends on appeal that the reduced punitive damages award of $600,000 is still excessive, and that, by applying the statutory damages cap of $250,000 to Bailey and not to Reserve National, the trial court is violating the rule against apportionment of damages between joint tort-feasors.See Buchanan v. Collier, 555 So.2d 134, 136 (Ala. 1989). We disagree.
The punitive damages cap under § 6-11-21 does not represent an apportionment of damages among joint tort-feasors. The purpose of punitive damages is to deter wrongful conduct and to punish those who may profit by such conduct. See CentralAlabama Elec. Coop. v. Tapley, 546 So.2d 371, 377 (Ala. 1989). The statutory cap serves to limit the amount of punitive damages that a defendant can be held liable for, unless the defendant falls within the exceptions to the imposition of that *Page 1010 
cap.[3] These exceptions address wrongful conduct that is, by its very nature, so egregious that a punitive damages award beyond the statutory cap is warranted, if the facts of the case so indicate, in order to adequately punish and deter such conduct.
The trial court found that the actions of Reserve National fell within the "pattern or practice" exception of §6-11-21(1),[4] but that none of Bailey's conduct excepted him from the $250,000 punitive damages cap. Clearly, the legislature did not intend for the statutory cap to fall by the wayside in the situation of joint tort-feasors, when one joint tort-feasor fits beneath the statutory cap and the other does not. To so hold would make a mockery of the law, by allowing a joint tort-feasor to escape punitive damages in excess of the cap merely because another tort-feasor is less culpable, even when the jury and the trial court have determined, based on the facts of the case, that the more culpable tort-feasor is guilty of conduct that deserves greater punishment and that requires a higher degree of deterrence than that appropriate for a less culpable tort-feasor.
A law will not be interpreted in such a way as to make it meaningless. In the situation where joint tort-feasors act with differing degrees of culpability, so that one tort-feasor's conduct falls within the statutory exception to the cap on punitive damages under § 6-11-21 and the other's does not, then the statutory cap may apply to one tort-feasor and not to the other, without violating the rule against apportionment between joint tort-feasors.
We now address, in tandem with the following issue, the contention that the judgment was excessive even after the remittitur.
On cross-appeal, the Crowells request this Court to reinstate the jury's $1,000,000 punitive damages award. Absent a finding that the remittitur was not supported by the directives ofGreen Oil and Hammond, supra, we will not do so. We have carefully examined the trial court's analysis of the amount of punitive damages, and we conclude that the court properly ordered a remittitur of $400,000 under the guidelines of GreenOil and Hammond. In setting aside the $1,000,000 verdict as flawed, the trial court recognized the fundamental, constitutionally guaranteed right to a trial by jury. Ala. Const. of 1901, art. I, § 11. Based upon the Hammond and GreenOil directives, a thorough review of the facts of this case, and a review of the amount of punitive damages awarded in other cases, the trial court determined that the jury's verdict went beyond the amount necessary to accomplish society's goal of punishment and deterrence, and it ordered a remittitur of $400,000. We cannot say that the trial court abused its discretion in so doing, and, therefore, we affirm the order of remittitur.
 III.
The defendants contend that the trial court erred in admitting evidence that Reserve National paid the costs of Bailey's defense. The court refused to admit the evidence to show that Reserve National ratified Bailey's conduct, but admitted it as evidence of bias, to show that Bailey, who was no longer employed by Reserve National, might be influenced to testify favorably for Reserve National by its payment of the costs of his defense.
A trial court has discretion to admit evidence that will show the bias, prejudice, *Page 1011 
or interest of a witness. Osborne v. Cobb, 410 So.2d 396, 398
(Ala. 1982). This Court has specifically held that a connection between a witness and an insurance company may be used to show a tendency of bias on the part of the witness. Hinton Sons v.Strahan, 266 Ala. 307, 313, 96 So.2d 426, 431 (1957), and cases cited therein. Furthermore, a party may show bias of its own witness, when that witness is called as an adverse witness.
Bailey was called by the Crowells as an adverse witness. The fact that Reserve National paid Bailey's defense costs is a matter the jury should be able to consider in determining the credibility of Bailey as a witness, much as a jury can consider whether the financial gain an expert witness may receive from testifying at trial could bias that witness's testimony.See Plitt v. Griggs, 585 So.2d 1317, 1322-23 (Ala. 1991). Evidence that a principal paid the court costs of its agent or former agent who is a co-defendant in the same case should be admissible at the discretion of the trial court as tending to show bias on the part of the agent in favor of the principal. See Price v. Cox, 242 Ala. 568, 570, 7 So.2d 288, 290 (1942) (evidence that one partner paid co-defendant partner's attorney fees in unrelated case admissible to show bias). Because there is no indication in the record before us that the trial court abused its discretion in admitting the evidence, we cannot conclude that the trial court erred in admitting evidence that Reserve National paid the costs of Bailey's defense.
 IV.
The final issue before us is whether the trial court erred in submitting the claim of mental anguish to the jury and in refusing to give Reserve National's proposed jury charges number 24 and number 32. Rule 51, A.R.Civ.P., as it concerns appeals of refused jury charges, states:
 "The refusal of a requested, written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in charges given at the request of the parties. No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
Reserve National did not object to the court's refusal of charge number 32, and, thus, as to that requested charge, did not preserve this issue for appeal. The trial court did not err in refusing Reserve National's charge number 24, because the rule of law set forth in the requested charge was given to the jury when the court, in charging the jury, read Alabama Pattern Jury Instruction 11.03 and Ala. Code 1975, § 6-11-20, to the jury. A.R.Civ.P. 51.
The claim of mental anguish was properly submitted to the jury. Reserve National contends that Allen v. Walker,569 So.2d 350 (Ala. 1990), stands for the position that a plaintiff "cannot recover [for] mental anguish or emotional distress resulting from negligence." Reserve National's brief at 33. Its interpretation of the language in Allen is too broad.
Allen involved an action containing claims of both negligent infliction of emotional distress and intentional infliction of emotional distress. The negligent infliction claim was disposed of on a motion for summary judgment. This Court affirmed the summary judgment as to the negligence claim, stating that "there is no cause of action for the negligent infliction of emotional distress." Id. at 352 (emphasis in original).
However, the case before us involves a claim of fraud, and it is not based on a cause of action for infliction of emotional distress, whether negligent or intentional. Damages for mental distress may be awarded in a case of willful fraud. PacificMut. Life Ins. Co. v. Haslip, 553 So.2d 537, 540 (Ala. 1989),affirmed, 499 U.S. 1, *Page 1012 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). As Haslip indicates, a fraud may be intentionally perpetrated, and that fraud, being willful fraud, could result in emotional distress to the victims. In such a case, damages for the mental distress caused by the willful fraud may be awarded by the jury, whether the actual infliction of the emotional distress by the defendant was intentional or reckless. See Associates Financial Services, supra.
Punitive damages may be awarded for willful or intentional fraud, pursuant to § 6-11-20. Because the jury awarded punitive damages against Reserve National and Bailey, we must conclude that the jury determined that the fraud was willful on the part of both defendants. For the above reasons, and because damages for mental distress may be awarded in the case of willful fraud, the trial court properly submitted the claim of mental anguish to the jury.
In view of the record, and in light of the foregoing reasoning, we conclude that the judgment of the trial court, as to all issues raised by these appeals, including the remittitur of the punitive damages award, is due to be affirmed.
1911098 — AFFIRMED.
1911099 — AFFIRMED.
1911157 — AFFIRMED.
MADDOX, ALMON and HOUSTON, JJ., concur.
KENNEDY, J., concurs in the result.
[1] The Crowells' monthly premium under their Reserve National policies totalled $106.80. The $207.50 initially collected by Bailey from the Crowells represented a $15.00 registration fee plus two monthly premiums of $96.25. Bailey originally told the Crowells that their monthly premiums would be $96.25 because he forgot to add an additional $10.55 for the cost of a rider.
[2] We again emphasize that the constitutionality of this statute is not challenged, and we assume for the present discussion that the statute is valid.
[3] Section 6-11-21 provides:
"An award of punitive damages shall not exceed $250,000.00, unless it is based upon one or more of the following:
"(1) A pattern or practice of intentional wrongful conduct, even though the damage or injury was inflicted only on the plaintiff; or,
"(2) Conduct involving actual malice other than fraud or bad faith not a part of a pattern or practice; or,
"(3) Libel, slander or defamation."
[4] Specifically, the trial court in its order found a pattern or practice of intentional wrongful misconduct by Reserve National and its agents based on, among other evidence, testimony of two other witnesses that, on earlier occasions, "agents of Reserve National misrepresented the truth to them regarding pre-existing condition coverage." C.R. 445.