Guy HUNT, Individually and as Governor of the State of Alabama, Plaintiff,

v.

James H. ANDERSON, et al., Defendants.

No. CV-91-A-1150-N.

United States District Court, M.D. Alabama, N.D.

May 28, 1992.

1558

M. Roland Nachman, Thomas W. Thagard, Maury D. Smith, Robin G. Laurie, Montgomery, Ala., for plaintiff.

James H. Evans, David Christy, Walter Turner, George E. Jones, C.C. Torbert, Asa Rountree, Montgomery, Ala., Maynard, Cooper, Frierson & Gale, Birmingham, Ala., for defendants.

## ORDER

ALBRITTON, District Judge.

On October 30, 1991, the court denied the plaintiff's motion for a preliminary injunction and denied the defendants' motion to dismiss. Answers were filed, the parties proceeded with extensive discovery, and the case is now before the court on cross motions for summary judgment.

The court has read and carefully considered the motions, the submissions of the parties, including all depositions, interrogatories and answers, report of investigation with exhibits, and all other documents, as well as all briefs filed and cases cited by the parties. For the reasons given hereafter, the court finds that summary judgment is due to be granted in favor of the defendants.

## THE FACTS

The material facts, as established by the submissions before the court, are without dispute.

The Alabama Ethics Law was first enacted by the Alabama Legislature in 1973 as Act No. 1056. It is presently codified as §§ 36–25–1 through 36–25–30, *Code of Alabama.* Among other things, it establishes a State Ethics Commission composed of five members appointed by the Governor, the Lieutenant Governor, and the Speaker of the House of Representatives (§ 36–25–3); empowers the Commission to make investigations upon complaint by any individual with respect to alleged violations of the Law, to report suspected violations to the appropriate law enforcement authorities, and to issue and publish advisory opinions on the requirements of the Law (§ 36–25–4); requires public officials to file with the Commission annual Statements of Economic Interests (§ 36–25–14); makes it a crime for any person to bribe a public official or for any public official to accept a bribe (§ 36–25–6); and makes it a crime for a public official to use an official position or office to obtain direct personal financial gain for himself unless such use and gain are specifically authorized by law (§ 36–25–5).

The Ethics Law defines "public official" to mean, "Any person elected to public office by the vote of the people at state, county or municipal level of government or their instrumentalities and any person appointed to a position at the state, county or municipal level of government or their instrumentalities." (§ 36–25–1(11))

The plaintiff, Guy Hunt, is Governor of the State of Alabama. He is also a member and an elder of the Primitive Baptist Church. On a number of occasions during the years 1987—1991, he spoke at religious services of the Primitive Baptist Church at various locations while traveling on state-owned aircraft at state expense. Elders in

the Primitive Baptist Church preach at religious services and are not paid a salary for doing so. Often offerings, known as love offerings, are given by members in attendance at the religious services and distributed to the elders who preach. This is in keeping with the teachings of the Primitive Baptist Church. On the occasions in question, Governor Hunt accepted such offerings, as he had done when speaking as an elder of the Primitive Baptist Church for many years before becoming Governor. He kept the offerings for his own use until this practice became the subject of media attention in August, 1991, after which he paid over to the State of Alabama the amounts he had received from such offerings.

Opinions issued by the Ethics Commission under previous governors had placed no limits on the use of state-owned vehicles and aircraft by the governor and had specifically authorized their use for private trips involving personal interests of the governor and his family members and vacation trips. These opinions did not address the question of a governor receiving payments of money for activities conducted while on such trips.

In August and September, 1991, a number of Alabama citizens filed complaints with the Ethics Commission charging that the Governor's use of state aircraft to travel to religious services where he accepted donations of money was a violation of the State Ethics Law. The State Ethics Commission gave the Governor notice of these complaints, an investigation was conducted by the Commission, and a hearing was held on September 20, 1991. Governor Hunt was given notice of the hearing and was invited to attend. He did not attend, but he was represented at the hearing by attorneys who had earlier filed a written statement of his position and who made a presentation on his behalf. After the hearing, the Commission, by a vote of 4–0, determined "that there was probable cause to believe that (the Governor) may have violated the State Ethics Law." The Commission forwarded its file to the Attorney General of Alabama "for his review and appropriate legal action." There has been no indictment, and there is no evidence before the court that the Attorney General has made a decision whether or not to seek an indictment. The finding by the State Ethics Commission received considerable publicity in the media.

## THE ISSUES

This court is not called upon to rule whether Governor Hunt's actions violated the State Ethics Law's prohibition against a public official's use of his "official position or office to obtain direct personal financial gain...." The issues before the court relate to the Governor's request for an order declaring that an application of the State Ethics Law to him would violate federal law and his further request that the court enjoin any prosecution of him for alleged violations of the Law because various constitutional rights would be violated by such a prosecution.

Governor Hunt contends that application of the State Ethics Law to him would violate rights guaranteed to him under the Constitution of the United States because it would violate the doctrine of separation of powers (Article IV, § 4), deny him equal protection of the laws (Fourteenth Amendment), deny him due process of law (Fourteenth Amendment), and abridge his right to freedom of religion (First and Fourteenth Amendments).

### Separation of Powers

■ Article IV, Section 4 of the United States Constitution provides that, "The United States shall guarantee to every State in the Union a Republican Form of Government...." The Governor argues that the separation of governmental powers among three separate but equal and independent branches of government, executive, legislative, and judicial, is essential to a republican form of government. Therefore, he contends, if application of the State Ethics Law to him violates the separation of powers doctrine, this would constitute a violation of Article IV, Section 4 of the Constitution. Accordingly, he asks this court to declare that there is such a

violation and that the Ethics Law cannot constitutionally be applied to him.

Alabama's Constitution provides that the powers of government shall be divided into three separate departments, legislative, executive, and judicial (Article III, § 42) and that the powers of one department shall never be exercised by another. Therefore, if this is an element of a republican form of government which the U.S. Constitution guarantees to the states, it is met in Alabama.

The federal courts in our country, however, have historically left to the courts of the individual states questions involving alleged state violations of the doctrine of separation of powers.

In 1902, the Supreme Court held in *Dreyer v. Illinois*, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902), that

> Whether the legislative, executive and judicial powers of a State shall be kept altogether distinct and separate or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State.

*See also, Sweezy v. New Hampshire*, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957) ("Moreover, this Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments."); *Attwell v. Nichols*, 608 F.2d 228 (5th Cir.1979) ("The principle of separation of powers is not enforceable against the states as a matter of federal constitutional law.")

This federal court will not address the merits of the Governor's contention that application of the State Ethics Law to him violates the doctrine of separation of powers. That is a matter of state law.[1]

1. The court notes that the Alabama Court of Criminal Appeals, in the case of *Allen v. State*, 380 So.2d 313, 326 (1979), rejected a contention that the Ethics Law unconstitutionally abrogated the separation of powers doctrine. Certiora-ri was denied by the Supreme Court of Alabama, 380 So.2d 341 (1980), and by the United States Supreme Court, 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

### Equal Protection

■ Governor Hunt contends that application of the State Ethics Law to him would deny him equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. This contention is based upon the assertion that the Ethics Law does not apply to the judicial branch of government, although it is sought to be applied to him.

The complaint contains the following allegation:

> 6. By administrative construction, by judicial decision, and by legislative amendment, members of the judiciary of the State of Alabama are not held or treated or considered as 'public officials' within the scope and meaning of the State Ethics Law.

This allegation was one of the reasons the court denied the defendants' motion to dismiss, so that the equal protection issue could be decided on the basis of proof as to how the Law is being interpreted and applied. The court now finds that this allegation is not sustained by the evidence.

1. Legislative amendment.

It is suggested that a 1975 amendment to the Ethics Law deleted "judicial officials" from the definition of "public officials" to whom the Law applied. Frankly, the court is unable to follow this argument.

The 1975 amendment merely replaced the definition of "state official" ("any elected official of the legislative, judicial, or executive branch of state government ...") with the definition of "public official" ("any elected official at the state, county, or municipal level of government....") While the amendment did delete specific reference to the judicial branch, it also deleted specific reference to the legislative and executive branches. It now refers instead to *"any* elected official," which would include elected officials of all three branches.

### 2. Judicial decision.

The only judicial decision to which the plaintiff points is *Wright v. Turner,* 351 So.2d 1 (Ala.1977) in which the Supreme Court of Alabama held that members of the Judicial Compensation Commission and the Court of the Judiciary were not subject to the State Ethics Law. There, however, the court held that these persons were not "public officials" and did not address the holding of the trial court that application of the financial disclosure provisions of the Law to these members would be an unconstitutional violation of the separation of powers. They were held not to be public officials because they did not fall within any of the definitions of that term contained in the Law, not because they were connected with the judicial branch. No appellate decision has held that judges are not covered by the Ethics Law.

### 3. Administrative construction.

The evidence before the court refutes without dispute the allegation that members of the judiciary by administrative construction are not treated as "public officials" subject to the Ethics Law. The Ethics Commission has issued numerous opinions in which various provisions of the Ethics Law has been applied to judges. There is no evidence before the court of any instance of administrative construction in which judges have been held not to be "public officials". The court finds from the evidence that the Commission has consistently applied the Ethics Law to members of the judicial branch, as well as to others.

The court holds that application of the State Ethics Law to Governor Hunt would not violate his right to equal protection of the laws.

### Due Process

Governor Hunt next contends that application of the Ethics Law to him violates his right to due process guaranteed under the Fourteenth Amendment. He argues, first, that the Ethics Law was applied to him by the Commission in a discriminatory and *ex post facto* manner; second, that the Law is too vague to be validly enforced; and, third, that he has been denied procedural due process.

### 1. Claims of discrimination.

█ The Governor bases his claim of discriminatory application on two of the Commission's Advisory Opinions which he contends authorized his challenged actions, Advisory Opinions 466 and 1019.

Advisory Opinion 466, issued in 1980, dealt with a question as to whether the section of the Ethics Law proscribing the use of a public official's position to obtain direct personal financial gain was violated when the Governor used state airplanes for private personal trips and vacation trips. The Opinion treated aircraft the same as vehicles and held that the Governor may use state-owned aircraft for "private trips involving personal interests of the Governor and/or his family members [and] ... vacation trips." The Opinion concluded as follows:

> Until the Alabama Legislature shows that tax monies appropriated by them for travel of the Governor and his family should not include travel in State-owned vehicles and aircraft for private and/or personal trips, the Alabama Ethics Commission holds that the Governor is not in violation of the law.

Advisory Opinion 1019 was issued in 1986 in response to a question of whether a state official (not a governor) may use a state automobile and employee to transport friends without violating the Ethics Law. After summarizing previous Advisory Opinions dealing with the use of state automobiles, the Opinion contains the following pertinent language:

> In the foregoing cases, *excluding all travel by the Governor and his family, which appears to be allowable as a perquisite of his high office,* the key ingredients of the Opinions were (1) that the public official or employee was not using State vehicles for direct personal financial gain and (2) that some aspect of official State business was involved. These ingredients must govern every use of any State vehicle in Alabama *with the*

*exception of the travel of the Governor and his family members. (Parenthetically, this exemption can be justified by the necessity of protecting the Governor and his family members by arranging for all their travel in State-owned aircraft/automobiles.)* (Emphasis added)

The Governor argues that, in view of the previous opinions involving other governors, application of the Ethics Law to him under the facts here involved would be arbitrary, invidious, and discriminatory and would violate his constitutional right to due process.

It is conceded that Advisory Opinion 466 did not specifically deal with use of a vehicle or aircraft where separate personal financial gain was obtained, but held only that use of the aircraft for private personal trips and vacations did not constitute obtaining direct personal financial gain. The Governor argues that if a governor took his family to California on a state-owned plane for a vacation, as this Advisory Opinion would authorize, and thereby saved several thousand dollars which would otherwise have been spent for commercial airline tickets, there would clearly be direct personal financial gain obtained because of use of the official position of governor. Therefore, it is argued, this Advisory Opinion exempts the Governor from Ethics Law violations involving use of state aircraft.

The defendants in this case state in their brief that the conclusion in No. 466 that the cost of using state-owned aircraft for private trips involving personal interests of the Governor and for vacation trips does not constitute "direct personal financial gain" is "a conclusion of doubtful validity; and, as a practical matter, it may be that the Commission was attempting to grant an exemption or immunity to an earlier governor." This seems to be a rather candid recognition that the Commission's current position may be inconsistent with this previous opinion. The defendants say that, if that is the case, the previous opinion was wrong and the current position is right and that, at any rate, the previous Advisory Opinion did not go past the expense of the

trip and allow money to be made while on the trip.

As to Advisory Opinion 1019, the Governor argues that it clearly stated that in the use of state vehicles (extended to aircraft by Advisory Opinion 466) the Governor and his family are excepted from the prohibition against direct personal financial gain. Therefore, he says, the allegation that he violated the Ethics Law in the instant case is inconsistent with that Advisory Opinion.

In response, the defendants say that Advisory Opinion 1019's comments regarding a governor were not related to the question that had been asked of the Commission, and that "no one could reasonably believe that the Commission literally meant what it said." If it did, they argue, this Opinion would authorize a governor to use a state car or aircraft to transport products for sale in a personal business.

The State Ethics Commission is authorized by § 36–25–4(9) to issue and publish advisory opinions on the requirements of the Ethics Law, based on a real or hypothetical set of circumstances. These opinions are not law, but as with Attorney General's Opinions, merely insulate a person to whom they are directed from certain liability when acting pursuant to the opinion.

The question of whether Governor Hunt violated the Ethics Law by accepting offerings while on trips using state aircraft would be a question to be answered by a court in applying the facts to the Ethics Law, not by the Ethics Commission or its Advisory Opinions. This court, however, is not called upon to decide whether there was a violation of law. That would be a question to be decided by a state court if, and only if, the Attorney General decided to seek an indictment and a grand jury voted to indict. The fact that Advisory Opinions issued by the Ethics Commission during the administrations of other governors apparently placed no restrictions whatsoever on the use of state aircraft by a governor and his family may be very important considerations in determining whether to seek an indictment, whether to indict, or whether to convict.

The only relevance of the Advisory Opinions to the issues before this court is whether, because of them, the Commission's action in forwarding the matter to the Attorney General violated the Governor's right to due process or whether, because of them, any prosecution would violate such right. In view of the fact that these Advisory Opinions are not binding and protect only the persons to whom they are directed, the court holds that they did not create any rights in Governor Hunt to have his actions governed by them as a matter of due process.

### 2. Vagueness.

■ It is next contended that the statute in question, § 36–25–5, is unconstitutionally vague. The statute reads:

No public official or employee shall use an official position or office to obtain direct personal financial gain for himself, or his family, or any business with which he or a member of his family is associated unless such use and gain are specifically authorized by law.

The standard by which to judge this issue has been stated by the Supreme Court as follows:

[A] statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

It is argued that the Commission's earlier opinions holding that use of state vehicles and aircraft by a governor for personal reasons and vacations does not violate this statute, even though the expense of the trip would not be incurred personally, is proof that the statute is vague. These prior opinions, however, did not involve the receipt of money from activities conducted while on such trips.

The court does not understand the Supreme Court's standard to require that one must be able to predict with certainty the application of the law to every imaginable set of facts or that there be absolutely no room for disagreement as to interpretation. Not many laws could meet that high a standard.

The court finds that the proscription that "[no] public official ... shall use an official position or office to obtain direct personal financial gain for himself ..." is not "so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." Therefore, the statute does not violate due process of law on the basis of vagueness.

### 3. Procedural due process.

■ Governor Hunt contends that the proceedings before the Ethics Commission denied him procedural due process. The defendants respond that (1) the law does not require that Ethics Commission proceedings provide a person under investigation with procedural due process because its proceedings are "investigatory" in nature rather than "adjudicative", and (2) the Governor was afforded due process.

The Ethics Law specifically requires due process. Section 36–25–4(14) provides that, "... In all matters that come before the Commission concerning a complaint on an individual, the laws of due process shall be strictly adhered to."

Without referring to § 36–25–4(14), the defendants argue that the due process requirements that apply to an adjudicatory proceeding do not apply to an investigative proceeding such as that conducted by the Commission, under a 1960 Supreme Court decision.

In the case of *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), the Supreme Court held that the Civil Rights Commission was not required to supply an individual under investigation with such due process rights as apprisal, confrontation, and cross-examination. The Court found that these rights were normally associated with adjudicatory proceedings and that, since the Commission's only function was to investigate possible violations of civil rights laws and to find facts which may subsequently be used for legislative

action, there was no right to due process. This was so even though persons being investigated might suffer adverse effects from public opprobrium and scorn, and the possibility of criminal prosecution, because of the investigation.

In a separate concurring opinion in *Hannah*, Justice Frankfurter expressed concern over the harm that could be done to individuals by hearings and a public investigation. He would have extended "adjudicatory" standards to any proceedings which made findings of violations of law and also to proceedings which served an "accusatory" function. He stated:

> Were the Commission exercising an accusatory function, were its duty to find that named individuals were responsible for wrongful deprivation of voting rights and to advertise such finding or to serve as part of the process of criminal prosecution, the rigorous protections relevant to criminal prosecutions might well be the starting point for assessing the protection which the commission's procedure provides. *Hannah*, 363 U.S. at 488, 80 S.Ct. at 1543.

Further, he said:

> When official pronouncements on individuals purport to rest on evidence and investigation, it is right to demand that those so accused be given a full opportunity for their defense in such investigation, excepting, of course, grand jury investigations. *Id.* at 489–90, 80 S.Ct. at 1544.

These sentiments of Justice Frankfurter were approved by the Supreme Court in 1969 in the case of *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). There the Court reversed the granting of a motion to dismiss, which had been based on *Hannah*, and remanded for the plaintiff to have an opportunity to prove his allegations that the Louisiana Labor–Management Commission of Inquiry exercised a function "much akin to making an official adjudication of criminal culpabili-

ty," *Id.* at 427, 89 S.Ct. at 1852. Just what would make a proceeding one of such an accusatory nature as to require due process and whether something less than all the procedural protections afforded a defendant in a criminal prosecution would be sufficient are matters to be considered under the facts of an individual case.

The Alabama Ethics Law empowers the commission "[t]o make investigations ... upon complaint by any individual with respect to alleged violation of any part of this chapter"[2] and "[t]o report suspected violations of law to the appropriate law-enforcement authorities."[3] It further provides that "[a]ll prosecutions for violations of the provisions of this chapter shall be *initiated* and prosecuted by the attorney general of the state or by the district attorney having jurisdiction of the offense." [Emphasis added].[4] Based on these provisions, the defendants argue that the Commission performs a purely investigatory function and is covered by *Hannah*.

The Alabama Court of Criminal Appeals agreed with the position now taken by the defendants and held in the case of *Allen v. State*, 380 So.2d 313, 326 (Ala.Cr.App. 1979)[5], that Alabama State Treasurer Melba Till Allen was not entitled to a due process hearing before the Commission as a prerequisite to being prosecuted for using her official position to obtain direct personal gain.

■ Without question, a district attorney or the Attorney General may prosecute a person for violating the Ethics Law without the Ethics Commission first investigating the matter, and a prosecution may be initiated even if the Commission finds no probable cause. So, a probable cause hearing with due process protection is not a prerequisite to prosecution. The question here, however, is whether when an investigation and hearing are conducted by the Commission, the subject must be afforded due process rights in the proceeding, so that failure to do so would constitute a

---

**2.** § 36–25–4(7).

**3.** § 36–25–4(8).

**4.** § 36–25–27(b).

**5.** *cert. denied,* 380 So.2d 341 (Ala.); 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

violation of that person's constitutional rights.

The facts presented in this case show more action of an accusatory nature in practice than the Ethics Law actually mandates. It would be one thing to make a private investigation and simply "report suspected violations" to the appropriate authorities. It is another matter entirely for the Commission to make a finding of "probable cause" that an individual may have violated the Ethics Law and to make that finding public. In this case, such a finding was made, and it was publicized.

The evidence shows that the Executive Director of the Commission allowed himself to be quoted in the press regarding events leading up to the action of the Commission and responded to letters of criticism with letters indicating his belief that the Governor had acted wrongfully. Additionally, the Chairman at the time of the meeting made a statement to the press indicating his belief that the Governor had committed a criminal act analogous to robbing a bank which could not be undone by returning the money. While these statements were made by individuals and were outside of the scope of what they were called upon to do as a part of their official duties, they are evidence both of the public perception that Commission findings have some form of official authority and of willingness by a member and staffer to help foster that perception by public comments.

It might be that the Commission could fulfill its duties under the Ethics Law in a manner which would be purely investigative within the meaning of the *Hannah* decision. It has not chosen, however, to act in such a manner. It publicly releases findings of "probable cause" that a person may have violated the Ethics Law and such findings by an official state Commission obviously may have a profound effect on public opinion. This may well place more political pressure on the Attorney General to seek an indictment than would a mere non-public report of a suspected violation. The publicity surrounding a public finding of probable cause could well have an effect on potential grand jurors and petit jurors.

All of this is in addition to the certain adverse effect which the public release of a finding of probable cause will have on the reputation of the subject of the finding. No official commission of this state which acts in such a manner should be free to act with no consideration of due process. It may have been in response to the 1960 *Hannah* decision that the Alabama Legislature included a due process requirement in the 1973 Ethics Law.

While the State Ethics Commission does not perform an adjudicatory function, this court finds that the manner in which it has acted in this case (and this appears to be the Commission's normal chosen method of operation at this time) is sufficiently "accusatory" in nature to require some form of due process protection under the *Jenkins* decision, in addition to due process being required by the Ethics Law itself.

■ *Jenkins* left open the extent of procedural protections which must be afforded to comply with the requirements of due process, quoting the opinion in *Hannah* that "[w]hether the Constitution requires a particular right obtained in a specific proceeding depends upon a complexity of factors." *Jenkins*, 395 U.S. at 430, 89 S.Ct. at 1853. The court will address only the question of whether due process was afforded to Governor Hunt in this case and will not attempt to delineate what specific procedural protections the Commission should afford generally. In doing that, the court finds that Governor Hunt was afforded procedural due process.

On August 28, 1991, a letter was written to Governor Hunt by the Ethics Commission advising him that certain citizens had filed complaints with the Commission alleging that he may have violated the Ethics Law in connection with travel by state-owned aircraft to various speaking engagements. The letter advised the Governor of the period of time during which the violations allegedly occurred, the destinations of the trips, and the fact that the focus of the complaints seemed to be that his alleged use of state aircraft to these destinations resulted in his being given monies in the form of honoraria or offerings from per-

sons attending religious services where he was the speaker. Section 36–25–5(a) was given as the section of the Ethics Law allegedly violated and the statute was quoted. The Governor was given the names and telephone number of the persons who would be conducting an investigation of the complaints and was invited to contact the Commission office if he desired additional information. There can be no question that Governor Hunt was advised of the charges against him.

Section 36–25–4(14) prohibits the Commission from taking any investigatory action based upon anonymous complaints. The Commission's letter of August 28 gave the Governor the names and locations of the persons filing complaints, and letters written to him by the Commission on September 4 and September 6 identified the persons filing additional complaints. This sufficiently complied with due process requirements of confrontation.

The Governor complains that he was not given the opportunity to cross-examine witnesses. The hearing, however, did not involve testimony of fact witnesses. Some of the complainants were allowed to voice their complaints to the Commission, and it is true that the Governor and his attorneys were not permitted to cross-examine them. These complainants had been identified to the Governor before the hearing. It was the undisputed facts and the Governor's own records which he furnished the Commission, not the testimony of complainants, that formed the basis of the Commission's findings. That being the case, not allowing cross-examination of complainants was not a denial of due process.

Governor Hunt was given a full opportunity to present his side of the controversy to the Commission before any action was taken. His Legal Advisor wrote to the Commission, and his outside attorneys wrote a letter explaining in detail all of the reasons they contended there had been no violation of the Ethics Law. The Governor was invited to attend the hearing personally. He chose not to do that, but his attorneys did attend and made a presentation of the Governor's case to the Commission.

The court finds that Governor Hunt was afforded procedural due process by the Ethics Commission.

### Abridgement of Religious Freedom

██ Finally, Governor Hunt contends that the application of the statute's prohibition against using an official position to obtain direct personal financial gain to his receipt of offerings at religious services would violate his constitutional right to freedom of religion. This is because, he argues, the basic tenets of his church, the Primitive Baptist Church, call for the acceptance of such offerings.

Governor Hunt's deposition which was submitted to the court established the following: For many years, he has been an elder in the Primitive Baptist Church. Elders are not paid salaries. They preach at church services and often, but not always, offerings are taken up from those in attendance and given to the elder, or elders, who preached. It is a tenet of the church that such offerings are to be accepted, and all young elders are taught that. It would be considered gross disrespect to the persons giving the offering for the elder to refuse to accept it. No tenet of the church, however, would prevent an elder from giving the offering back to the church. The elder would have to be very careful, however, to have a specific reason to do that and not to make it appear that he did not appreciate the offering or that it was not sufficient. Also, no tenet of the church would have prevented the Governor, once he had accepted an offering, from donating it to charity or paying it over to the state.

The probable cause found by the Ethics Commission was not that the Governor may have violated the Ethics Law by accepting offerings for preaching in his church; it was that he may have violated the Ethics Law by using state aircraft to get to the church services where offerings were accepted. This would not amount to a restriction on his exercise of religious freedom, but on his use of state aircraft.

According to the Governor's testimony, offerings could be returned to the church for a good and specific reason without vio-

lating any tenet of the church. Presumably, it would be a good reason to say that state aircraft had been used to attend the service and that the State Ethics Law may prohibit acceptance of an offering under those circumstances.

Therefore, it would appear that in the future, Governor Hunt may accept offerings from preaching engagements where no state vehicle or aircraft is used, or use state vehicles or aircraft and accept and then return offerings because of a possible Ethics Law violation, or possibly donate the offerings to charity or the state, all without violating either the Ethics Law or any of the tenets of the Primitive Baptist Church. Accordingly, the court finds that the Governor's constitutional right to freedom of religion has not been violated.

### Conclusion

For the reasons stated, the court finds

1. That the Alabama Ethics Law, §§ 36–25–1 through 35–25–30, *Code of Alabama,* applies to Guy Hunt, as Governor of the State of Alabama.

2. That the plaintiff's constitutional rights have not been violated by the defendants.

3. That there is no basis for enjoining the Attorney General from taking such action as he may deem appropriate in the exercise of the duties of his office regarding the subject matter of this action.

WHEREFORE, the plaintiff's motion for summary judgment is hereby DENIED, the defendants' motion for summary judgment is hereby GRANTED, and summary judgment is hereby entered in favor of the defendants. Costs are taxed against the plaintiff.