[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1203 
The appellants, Carvine Langham, John Forister, and John Chapman, were convicted of violating the state ethics law, specifically of using their official positions to obtain direct personal financial gain, in violation of § 36-25-5(a), Code ofAlabama 1975. Langham was convicted of 11 counts of ethics violations, and she was sentenced to two years' imprisonment on each conviction, with the sentence suspended, and she was ordered to pay $11,108 restitution. Forister was convicted of four counts of ethics violations, and he was sentenced to two years' imprisonment on each conviction, with the sentence suspended, and he was ordered to pay $2,094 restitution. Chapman was convicted of four counts of ethics violations, and he was sentenced to two years' imprisonment on each conviction, with the sentence suspended, and he was ordered to pay $2,079 restitution.
The evidence presented by the State revealed that the appellants were appointed by the city counsel of the City of Prichard to serve as members of the Prichard Water Works and Sewer Board. Incident to board membership, the appellants attended various conferences held throughout the country. Although the appellants received no actual compensation, they were paid for their automobile mileage in attending the conferences, given a $100 per diem expense allotment, and advanced payment of their hotel bills for each conference. The evidence revealed that the Water Works Board issued checks to the appellants in advance of these conferences to cover their anticipated expenses for attending these conferences. The evidence further revealed that the appellants failed to reimburse the Water Works Board for the unused portions of the advances.
 I
The appellants argue that count I of each indictment, charging them with a violation of a state ethics law, was fatally defective because, they argue, the Water Works Board is not an instrumentality of the City of Prichard and, therefore, not an instrumentality of the State. Therefore, they argue, they are not public officials within the meaning of §36-25-1(11), Code of Alabama 1975.
Section 36-25-1(11), Code of Alabama 1975, provides:
 "PUBLIC OFFICIAL. Any person elected to public office by the vote of the people at state, county or municipal level of government or their instrumentalities and any person appointed to a position at the state, county or municipal level of government or their instrumentalities."
In support of their argument, the appellants contend that because the Prichard Water Works Board is a public corporation incorporated under § 11-50-310, et seq., Code of Alabama 1975 (Act No. 175, Ala. Acts 1951), it is not an instrumentality of the City of Prichard. The appellants argue that the legislature in 1951 enacted two acts (Act No. 175 and Act No. 775) pertaining to municipal water and sewer boards. Act No. 775 was codified in the Code of Alabama 1975, at § 11-50-340 et seq., and provided for the creation of boards of water and sewer commissioners by ordinance adopted by the governing body of a municipality. Therefore, the appellants contend that it was the legislature's intent in enacting two separate statutes that water and sewer boards established pursuant to Act 51-775 by city ordinance be instrumentalities of the municipality creating them as opposed to those water and sewer *Page 1204 
boards created by incorporation pursuant to Act No. 175.
In all cases concerning statutory construction, the court must ascertain and give effect to the intent of the legislature in enacting the statute. Gholston v. State, 620 So.2d 719, 721
(Ala. 1993); Ex parte Jackson, 614 So.2d 405, 406 (Ala. 1993);McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299,1301 (Ala. 1991); Powers v. State, 591 So.2d 587, 588
(Ala.Cr.App. 1991). "Such intent is gathered from the language of the statute itself, but reason and necessity for the statute are also relevant." Ex parte Sanders, 612 So.2d 1199, 1200
(Ala. 1993). Additionally, " 'it is presumed that the legislature does not enact meaningless, vain or futile statutes.' " Powers v. State, 591 So.2d at 588, quoting DruidCity Hospital Board v. Epperson, 378 So.2d 696, 699 (Ala. 1979). See also Reserve National Insurance Co. v. Crowell,614 So.2d 1005, 1010 (Ala.), cert. denied, ___ U.S. ___, 114 S.Ct. 84,126 L.Ed.2d 52 (1993) ("a law will not be interpreted in such a way as to make it meaningless"). The appellants' contention is without merit, based on an examination of the statutes in question, the history of the state ethics law, and Harris v.Ethics Commission, 585 So.2d 93 (Ala.Civ.App. 1991).
In Harris v. Ethics Commission, the appellant and other members of the Industrial Development Board of the City of Troy (hereinafter the "IDB") argued that the trial court erred in finding that the IDB was an instrumentality of the City of Troy and that, therefore, its members were "public officials" subject to the state ethics law. The appellant argued that the 1986 amendment to § 36-25-1(11), Code of Alabama 1975, made by Act No. 321, Ala. Acts. 1986, defining a "public official" as
 "Any person elected to public office by the vote of the people at state, county or municipal level of government or their instrumentalities and any person appointed to a position at the state, county or municipal level of government or their instrumentalities"
was intended by the legislature to limit rather than to expand the entities to be accountable under the state ethics law. The Court of Civil Appeals stated:
 "In 1975, the legislature clearly expressed its intent that IDB's be subject to the ethics laws [Act 75-130, § 2(k)]. The language of the 1986 revision did not contravene that intent. We agree with the commission's argument that the 1986 use of the generic term 'instrumentality' was a perfectly sensible response to the problems noted by our supreme court in Comer [v. City of Mobile, 337 So.2d 742 (Ala. 1976)] and Bagley [v. City of Mobile, 352 So.2d 1115 (Ala. 1977)]. This is especially true in light of the number and type of boards not yet created that would escape scrutiny if only those boards specifically enumerated were covered by the ethics laws."
It is apparent that the Harris court interpreted the 1986 revision of the definition of "public official" to be a remedial measure taken by the legislature to correct defects in § 36-25-1(11). See e.g. Bagley v. City of Mobile,352 So.2d 1115 (Ala. 1977); Comer v. City of Mobile, 337 So.2d 742
(Ala. 1976). Therefore, in resolving the issue before us, we must examine, as the Harris court did, the original provision of the state ethics law at issue here, § 36-25-1(11), in order to glean the legislature's intent. The definition of "public official" was added to the ethics law in the 1975 act amending that law:
 "Public official means any elected official at the state, county, or municipal level of government and any person appointed under state, county, or municipal law to an office where in the conduct of such office such person has administrative and discretionary authority for the receipt or expenditure of public funds. This definition shall also include members of state boards, commissions, committees, councils, and authorities, however selected, Presidents, Vice-Presidents, Chief Purchasing Officials and Chief Financial Officials of all schools, colleges and universities of the State; members of city and county industrial boards, planning and zoning boards, school boards, boards of adjustment, utility boards, housing boards, public hospital boards and any boards, commissions, committees, authorities or councils having jurisdiction *Page 1205 
with respect thereto, in all cites whose population is more than 15,000 according to the last decennial census. This definition excludes members of all other boards not named including but not limited to those commissions, committees, councils, boards, [or] authorities, functioning solely for cultural or historical purposes and advisory boards members and members of boards of trustees of institutions of higher learning of the State of Alabama.' "
After examining the "original" definition of "public official," we hold that the Prichard Water Works and Sewer Board, regardless of whether it is a creature of incorporation or whether it was established by city ordinance, is a "utility board" and, thus, subject to the state ethics law.
Because both enactments, § 11-50-310 et seq. and § 11- 50-340 et seq., are codified within the "public utilities" Chapter of the Alabama Code, and because the legislature clearly expressed its intent that "utility boards" be subject to the ethics law, no error occurred here. Moreover, because the 1986 revision eliminating the listing of individual boards, etc., did not contravene the legislative intent, it is harmonious with the applicable law. Harris.
 II
The appellants argue that the trial court erred in denying their motion for a judgment of acquittal because, they say, the State's evidence was insufficient to sustain their convictions for violations of the ethics law. Specifically, they argue that the State's evidence that they checked out of certain hotels before the conferences were over fails to establish that they did not, for example, check into other hotels and attend the remainder of the conferences.
A brief rendition of the facts pertinent to this issue is as follows: The State presented the testimony of 12 hotel managers, hotel account executives, and hotel comptrollers, who each testified that the appellants checked into a hotel, checked out prior to their originally scheduled departure date, and paid their hotel bills in cash. Kenneth Huggins, an employee of the Water Works Board, testified that he computed the per diem, the mileage, and the projected hotel expenses for each conference. The State then introduced, upon stipulation of the parties, a listing of the total amounts that each appellant had been advanced for each conference. Huggins further testified that the appellants had failed to reimburse the Water Works Board for unused travel monies. Ed McFadden, comptroller for the Water Works Board, testified that the total amount issued to Langham, Forister, and Chapman exceeded their expenses by $7,108, $2,094, $2,079, respectively, and that the appellants had not reimbursed the board for these funds. McFadden testified that he asked the appellants to produce any receipts accounting for the monies but they did not do so.
In Cox v. State, 585 So.2d 182, 203-205 (Ala.Cr.App. 1991),cert. denied, Cox v. Alabama, 503 U.S. 987, 112 S.Ct. 1676,118 L.Ed.2d 394 (1992), this court reiterated the principles involved in reviewing the sufficiency of the evidence necessary to support a conviction based on circumstantial evidence:
 " ' "The standard for appellate review of the sufficiency of the evidence in a case such as this one was aptly set out in Dolvin v. State, 391 So.2d 133 (Ala. 1980):
 " ' " ' "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 " ' " ' "[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). . . . *Page 1206 
" ' ". . . .
 " ' "In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, Ex parte Faircloth, 471 So.2d 493
(Ala. 1985).
 " ' "This court must revise and overturn the verdicts of juries 'where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach the conclusion that the finding and judgment are wrong.' Hunter v. State, 34 Ala. App. 565, 567, 41 So.2d 637 (1949)." Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App. 1985).
 " ' " 'The role of appellate courts is not to say what the facts are. Our role, . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.' Ex parte Bankston, 358 So.2d 1040, 1042
(Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches 'a clear conclusion that the finding and judgment are wrong.' Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). 'The rule is clearly established in this State that a verdict of conviction should not be set aside on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust.' Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821
(1969). . . .
 " ' ". . . Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused." Cochran v. State, 500 So.2d 1161, 1171 (Ala.Cr.App. 1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179
(Ala. 1985). "It is not necessary for a conviction that the defendant be proved guilty to the 'exclusion of every possibility of innocence.' " Burks v. State, 117 Ala. 148, 23 So. 530 (1898). "The facts and circumstances in evidence, if dissevered and disconnected, may be weak and inclusive; but their probative force, when combined, as it was the province of the jury to combine them, under proper instructions from the court, may have satisfied them of the guilt of the defendant." Howard v. State, 108 Ala. 571, 18 So. 813, 815 (1895)." (Final emphasis added; other emphasis original.)
Based on these principles, we hold that the evidence in this case is sufficient to support the convictions.
 III
Appellants Langham and Chapman contend that the provisions of the state ethics law, § 36-25-1(11), Code of Alabama 1975, defining a "public official" is unconstitutionally vague. More particularly, they contend that a public official cannot tell "from the four corners of the Ethics Act if [the official is or is not] included in the scope of the Act." Additionally, they contend that "whether the Prichard Water and Sewer Board on which [they] served 'is' or 'is not' an 'instrumentality' is left to pure speculation."
Hunt v. Anderson, 794 F. Supp. 1557, 1564 (M.D.Ala.), aff'd, 976 F.2d 744 (11th Cir. 1992), quoted the standard enunciated by the United States Supreme Court in Connally v. GeneralConstruction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322
(1926), on which to judge whether a statute violates due process of law on the basis of vagueness:
 "[A] statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."
See also Ex parte Woodard, 631 So.2d 1065 (Ala.Cr.App. 1993).
Section 36-25-1(11) is not "so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to *Page 1207 
its application." Thus, the statute does not violate the appellant's constitutional rights to due process on the basis of vagueness.
Consequently, we find no validity in the appellant's "vagueness" argument.
 IV
Appellant Chapman contends that "the State was required to elect whether it would submit its case to the jury on Count I of each indictment (the ethics charge) or Count II of each indictment (the theft by deception charge), or in the alternative, the trial judge was required to instruct the jury that [he] could not be found guilty on both counts of the indictments." He contends that, although the jury acquitted him of the theft by deception charges, he was entitled to a judgment of acquittal because of the "possibility" of multiple punishments for the same offense. The appellant makes it clear that his argument is premised on double jeopardy grounds, as opposed to inconsistent verdict grounds.
It is well settled that the guarantee against twice being placed in jeopardy for the same offense protects against multiple punishments for the same offense. See North Carolinav. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076,23 L.Ed.2d 656 (1969). This is not the case here, however. Clearly, the appellant could have been convicted of both violating the state ethics law and of theft by deception because each offense requires proof of an element not required by the other.
The test enunciated in Blockburger v. United States,284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), has been used to determine whether two offenses are the "same" for double jeopardy purposes "in the context of multiple punishments imposed in a single prosecution." Garrett v. United States,471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304,52 S.Ct. at 182. See e.g. Chandler v. State, 615 So.2d 100, 104
(Ala.Cr.App. 1992), cert. denied, 615 So.2d 111 (Ala. 1993) (appellant was convicted of violations of the state ethics law and theft by deception; conviction on the theft charge was reversed, however, because the State failed to prove intent to commit a theft).
Appellant Chapman was convicted only of the ethics violations and received only one sentence for each conviction; his argument that he was subjected to the "possibility" of "multiple punishments for the same offense" is without merit.
 V
Appellant Chapman argues that the trial court erred in denying his motion for a new trial, which was based on the prosecutor's allegedly improper remarks during closing argument regarding Chapman's failure to take the stand and testify in his own behalf. The record indicates that the prosecutor stated:
 "[Prosecutor]: Well, ladies and gentlemen, that's not quite true. There is a fifth thing that Mr. McFadden has testified to, yes, we went through each one of those calculations. Certainly, we went through those calculations to figure out what the money was. And we looked at the receipts to see if the receipts matched what they had been paid for. Certainly, we went through the calculations. That's our job. And then, did we then go and indict. No, ma'am, no, sir, we didn't then go and indict. We then go to the defendants and say, 'Look, here's what we got. What happened? And when we don't get an answer —
 "MR. BOSWELL: Judge, now I'm going to object to this. It's highly improper. It's highly prejudicial. Mr. Harrison knows exactly what he's doing there. It is clear innuendo and a clear comment on the failure of the defendant to take the stand and asking this jury to draw some kind of an inference from that. We object to it.
 "THE COURT: There is no duty on the defendant to take the stand — excuse me, just a minute.
"[Prosecutor]: Yes, sir. *Page 1208 
 "THE COURT: There is no duty on any defendant to take the stand. In fact, it's a violation of their constitutional rights if you comment on that. I do not construe him commenting on that. Any lawyer has a right in closing statements, and I'll tell you in more detail in a minute, what he thinks the inferences and conclusions are. He has a right to reply in kind. If you did not hear any testimony about this, disregard it. Proceed."
 "[Prosecutor]: Ladies and gentlemen, the last thing I want to do is what Mr. Boswell was talking about. Each and every witness came before you and raised his hand in your presence and swore to tell the truth when they took this stand. The evidence that you must consider in arriving at your verdict when you go back to the jury room is nothing that I say, nothing that Mr. Davis says or any of the other lawyers say in our opening argument, our closing argument, indeed, even in the questions that we asked; the evidence is the answers that were given under oath by the witnesses who took this stand and the physical documents and there's a whole bundle of things that the court has admitted into evidence.
 "Now I hope that one of you recall that Mr. McFadden, our investigator, testified and he, like every other witness, raised his hand and promised to tell the truth.
"MR. BOSWELL: I object on the same basis.
"THE COURT: Overruled.
 "— and during the course of his testimony — and this came out, not from the State, but on cross-examination. It came out that Mr. McFadden said, yes, I did all of those things and if I'm — I might stand corrected on this, I believe it was Mr. Boswell that asked the question and brought the response out about, yes, we went through those four things, the calculations and finely arrived at the amounts. We went and got the checks. We went and showed that they were cashed by each of the particular defendants for all of these cases and we went and got the hotel receipts. And Mr. McFadden was asked, 'Well, isn't that what you base your thing on?' he said "No, not in its entirety.'
 "MR. BOSWELL: Judge, I'm going to object to this. It is clearly a comment that they are saying, 'Well, he knows what he is saying.' The burden of proof is on them to present evidence in this trial.
 "THE COURT: There is no question about that, Mr. Boswell.
 "MR. BOSWELL: In this trial, not anything that went on before this trial started.
 "THE COURT: There is no question about that, Mr. Boswell.
". . . .
"THE COURT: Proceed.
 "[Prosecutor]: Mr. McFadden's response was, 'That's not all we did. We went to each of the defendants and we asked them to explain the discrepancies or to give us some receipts' and those defendants either couldn't or wouldn't and based on those five things, these indictments were brought.
 "MR. BOSWELL: Object, again, Judge, they didn't have any duty to.
 "THE COURT: Overruled. Mr. Boswell, I'll charge the jury in a minute, not you, nor Mr. Harrison."
The prosecutor's argument, in rebuttal, was merely a reply to the comments made by defense counsel in closing argument that the appellant should be acquitted because the State failed to prove that he had not attended the conferences in their entirety merely because he checked out of his hotel before the conferences were over. In Chatom v. State, 619 So.2d 222,224-25 (Ala.Cr.App. 1993), this court held:
 " 'When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply.' Davis v. State, 494 So.2d 851, 855 (Ala.Cr.App. 1986). This court, in Stephens v. State, 580 So.2d 11 (Ala.Cr.App. 1990), aff'd, 580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991), stated the following with regard to a prosecutor's statements in arguments:
 " ' ". . . '[I]t must be examined in its context and in light of what had transpired, *Page 1209 
that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer.' Washington v. State, 259 Ala. 104, 65 So.2d 704 (1953); Gibson v. State, 347 So.2d 576 (Ala.Crim.App. 1977); Rutledge v. State, 482 So.2d 1250 (Ala.Cr.App. 1983). The rule in Alabama is that 'remarks or comments of the prosecuting attorney, including those which might otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements.' Shewbart v. State, 33 Ala. App. 195, 32 So.2d 241, cert. denied, 249 Ala. 572, 32 So.2d 244 (1947); Camper v. State, 384 So.2d 637 (Ala.Cr.App. 1980); Wilder v. State, 401 So.2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); Miller v. State, 431 So.2d 586
(Ala.Crim.App. 1983); Rutledge, supra."
 " 'Stephens, 580 So.2d at 21, quoting Henderson v. State, 460 So.2d 331, 333 (Ala.Cr.App. 1984). See also Williams v. State, 601 So.2d 1062, 1074
(Ala.Cr.App. 1991).' "
Additionally, the trial court gave prompt curative instructions to the jury to disregard any improper comment. Therefore, assuming the appellant has a right to complain about one of the prosecutor's remarks, we find that any error was cured by the court's instructions. Hampton v. State,620 So.2d 99, 101 (Ala.Cr.App. 1992). Cf. Covington v. State,620 So.2d 122 (Ala.Cr.App. 1993).
We hold that the prosecutor's remarks, when evaluated in light of the entire trial, including the trial court's repeated curative instructions to the jury regarding the comments of counsel, and in light of defense counsel's prior comments, did not deny the appellant a fair and impartial trial.
 VI
Appellant Forister argues that the trial court erred in failing to instruct the jury adequately as to a specific element of § 36-25-5, i.e., it failed to instruct the jury that a public official could not use his official position to obtain direct personal financial gain for himself, his family, or any business with which he or a member of his family is associated"unless such use and gain are specifically authorized by law."
Following the trial court's instructions to the jury, the appellant objected on the grounds that the language, "unless such use and gain or specifically authorized by law," was not included in the language of the indictment. Defense counsel stated that, although his objection may have been untimely, he felt that the indictment should contain that language. On appeal, the appellant does not challenge the validity of the indictment, but rather now objects to the trial court's failure to instruct the jury as to this element. Without determining the merits of the appellant's objections as to the indictment, it is clear that this matter as it pertains to instructions to the jury was not preserved. Thus, because this specific objection was not presented to the trial court, this argument is barred from appellate consideration. Chandler v. State,615 So.2d 100 (Ala.Cr.App. 1992), cert. denied, 615 So.2d 111
(Ala. 1993); Turrentine v. State, 574 So.2d 1006
(Ala.Cr.App. 1990).
 VII
Appellants Langham and Forister argue that the applicable statute of limitations, § 15-3-1, Code of Alabama 1975, barred prosecution on the indictments in cases CC-92-3770, CC-92-3772, CC-92-3773, CC-92-3786, and CC-92-3788, respectively. Section15-3-1, Code of Alabama 1975, provides: "The prosecution of all felonies . . . must be commenced within three years after the commission of the offense."
Section 15-3-7, Code of Alabama 1975, provides: "A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender."
Section 15-3-6, Code of Alabama 1975, provides:
 "When an indictment is lost, mislaid or destroyed, when a judgment is arrested or an indictment quashed for any defect therein, for the reason that it was not found by a grand jury regularly organized, *Page 1210 
because it charged no offense or for any other cause or when the prosecution is dismissed because of a variance between the allegations of the indictment and the evidence and a new indictment is ordered to be preferred, the time elapsing between the preferring of the first charge or indictment and the subsequent indictment must be deducted from the time limited for the prosecution of the offense last charged."
The State presented evidence that the indictments in CC-92-3770, CC-92-3772, and CC-92-3773, originally returned against appellant Langham on August 28, 1992, were based on offenses that occurred on August 31, 1989, and November 27, 1989, respectively. The State also presented evidence that the indictments in CC-92-3786 and CC-92-3788, originally returned against appellant Forister on August 28, 1992, were based on offenses which occurred on August 31, 1989, and October 6, 1989, respectively. Thus, the three-year statute of limitations on the those indictments was tolled on August 28, 1992, the date of the original indictments. Additionally, the State presented evidence that appellants Langham and Forister were again indicted for these same offenses on November 7, 1992. However, no evidence was presented by the State regarding the dates that the original indictments of the appellants were quashed.
In order for the statute of limitations question to be addressed, the dates that the original indictments were quashed, if in fact they were, must be made known to this court. Without those dates, any discussion regarding this issue is an exercise in futility. See Pinkard v. State,415 So.2d 1220 (Ala.Cr.App. 1982), for a succinct analysis of § 15-3-6; see also Beverly v. State, 497 So.2d 513, 517
(Ala.Cr.App. 1985), rev'd in part, 497 So.2d 519 (Ala. 1986) (wherein Judge Taylor, writing for a unanimous court, briefly and pragmatically addressed § 15-3-6).
Therefore, the judgment as to appellant Chapman is affirmed. As to appellants Langham and Forister this cause is remanded to the trial court with instructions that an evidentiary hearing be conducted on the disposition of the original indictments. Due return shall be made to this court within 90 days from the date of release of this opinion.
AFFIRMED AS TO CHAPMAN;
REMANDED WITH INSTRUCTIONS AS TO LANGHAM AND FORISTER.
All Judges concur.